## ANDERSON, Receiver, *v.* PHILADELPHIA WAREHOUSE COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued April 3d, 4th, 1884.—Decided April 21st, 1884.

*National Banks.*

A pledgee of shares of stock in a national bank who in good faith and with no fraudulent intent takes the security for his benefit in the name of an irresponsible trustee for the avowed purpose of avoiding individual liability as a shareholder, and who exercises none of the powers or rights of a stockholder, incurs no liability as such to creditors of the bank in case of its failure.

This suit was brought by the receiver of the First National Bank of Allentown, an insolvent national bank, to recover an assessment made by the Comptroller of the Currency on the shareholders to pay debts, and the only question presented for determination is whether, upon the facts the Philadelphia Warehouse Company was in law a shareholder of the bank at the time of its failure, and as such liable to creditors. The facts, as shown by the undisputed testimony, or found by the jury, are these :

From the 17th of April, 1864, until December 27th, 1871, William Kern was the registered holder of 490 shares of the stock of the bank. Kern was one of the partners in the banking and business firm of W. H. Blumer & Co., composed of himself, William H. Blumer, and Jesse Line. Blumer was the president of the bank, and the other two partners in the firm directors. A son of the president was cashier and also a director.

In the latter part of the year 1871 Blumer & Co., through William H. Blumer, arranged with the Philadelphia Warehouse Company in Philadelphia for a loan or banker's credit, to be secured by a deposit of collaterals. The account was opened and the first drafts paid upon a deposit of gas stocks as security. On the 27th of December, 1871, Kern transferred 450 of the shares of the stock standing in his name on the books of the bank, and had a new certificate issued in the name of T. Charlton Henry, president. This certificate was receipted to the bank by Blumer, its president, and by him either taken or sent to the Warehouse Company as further security for the credit extended to Blumer & Co. The certificate came into the hands of Henry, the president of the company, on the 28th of December, and soon after another draft of Blumer & Co. for $10,000 was paid. On or before the second of January the fact of the transfer of the stock to the name of Henry, president, was brought to the attention of some of the directors and members of the executive committee of the Warehouse Company. At once it was deemed inadvisable to have the stock stand in the name of the president, and the certificate was, on the 3d of January, transferred, under the seal of the company and the signatures of its president and secretary, to Dennis McCloskey, an irresponsible person, and a porter in its employ. The certificate with the transfer upon it was sent the same day by the secretary of the company to Blumer & Co., with a request that the stock might be transferred and a new certificate issued in the name of McCloskey and returned. To this request Blumer replied as follows:

" Wm. H. Blumer, President.         J. A. Blumer, Cashier.

      " The First National Bank of Allentown.

                 " ALLENTOWN, PENN'A, *Jan'y 4th,* 1872.

" T. CHARLTON HENRY, ESQ., President.

    " To-day I received one remittance from your L. S. Maderia, to wit, certificate of stock for four hundred and fifty shares of the capital stock of the First National Bank of Allentown, with a request to assign the same and make a new certificate to Dennis McCloskey. I do not understand the nature of this transaction, and would respectfully ask you to give me explanation why the stock is to be transferred to a third party ; and if it would be better to place other securities with you, such as gas stock, in cases where you pledge them with outsiders.

    " If my remarks seem improper, pardon me, for I only ask questions to gain wisdom.     Very respectfully,

                              " WM. H. BLUMER,

                        " for W. H. BLUMER & Co."

To this letter the company sent the following answer :

                              " *January 6th,* 1872.

" WM. H. BLUMER, ESQ., Pres't.

    " Dear Sir : I am in receipt in your favor of the 4th inst., and in reply would say that I am not surprised at your inquiry, since you were requested to have the certificate made out in my name. We have no need to borrow any money, nor do we expect or intend to put this stock out of our hands, but the failure of one or two national banks lately led our directors to consider the clause in the national bank act which renders all stockholders liable, in case of failure, to pay up to the receiver the full amount of the stock in their name ; and on this account we determine to have the certificates of national bank stock put in the name of Dennis McCloskey, who is the boy in our office, taking his power of attorney to transfer the same. Hoping this explanation will prove satisfactory,       I am yours respectfully,

                           " T. C. HENRY, *Pres't.*"

Upon the receipt of this letter the stock was transferred in due form, January 10th, to McCloskey on the books of the bank, and a new certificate issued in his name. The certificate was receipted for McCloskey by W. H. Blumer and forwarded

to the Warehouse Company as an inclosure in the following letter:

"Office of the Allentown Gas Company.
"W. H. Blumer, President.          J. M. Line, Treasurer.
                    "ALLENTOWN, PA., *January* 10*th*, 1872.
"T. C. HENRY, ESQ.

"Dear Sir: Inclosed I hand you certificate of 450 shares First National Bank of Allentown. It is never out of the way if you are cautious, but in this case I presume t' ere would have been no danger. I would not sell the gas stock for $50,000.
                    "Truly,          W. H. BLUMER."

McCloskey never had possession of the certificate, and, at the request of the Warehouse Company, executed in blank, as of the date of January 3d, an irrevocable power of attorney for the sale and transfer of the stock. He died in 1875. After his death the stock was transferred on the books of the bank, at the request of the company, to Francis Ferris, another employé and also an irresponsible person. This certificate was delivered to the company, and Ferris indorsed thereon an irrevocable power of attorney for its transfer. The stock stood in his name at the time of the failure of the bank in 1878, the company holding the certificate.

Dividends were paid regularly on this stock to Kern or Blumer & Co. from the time of the original transfer up to and including December, 1876. The Warehouse Company never received any dividends and never acted as a shareholder. Blumer & Co. failed in 1877, largely indebted to the Warehouse Company, which still held as security the stock standing in the name of Ferris. The failure of Blumer & Co. crippled the bank so that it never afterwards paid a dividend, and on the 15th of April, 1878, it was put into insolvency by the Comptroller of the Currency and a receiver appointed. On the 10th of May following the Comptroller assessed the shareholders twenty per cent. of the par value of their shares to pay the debts; and this suit was brought to collect that assessment on the 450 shares in question. The jury, under instructions applicable to the foregoing state of facts, rendered a verdict

for the defendant, and to reverse a judgment on that verdict this writ of error was taken.

*Mr. P. K. Erdman*, for plaintiff in error.

*Mr. R. C. McMurtrie*, for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

It is well settled that one who allows himself to appear on the books of a national bank as an owner of its stock is liable to creditors as a shareholder, whether he be the absolute owner or a pledgee only, and that, if a registered owner, acting in bad faith, transfers his stock in a failing bank to an irresponsible person, for the purpose of escaping liability, or if his transfer is colorable only, the transaction is void as to creditors. *National Bank* v. *Case*, 99 U. S. 628; *Bowden* v. *Johnson*, 107 U. S. 251. It is, also, undoubtedly true, that the beneficial owner of stock registered in the name of an irresponsible person may, under some circumstances, be liable to creditors as the real shareholder, but it has never, to our knowledge, been held that a mere pledgee of stock is chargeable where he is not registered as owner.

There is in this case no evidence of actual fraud or bad faith. The Warehouse Company never was the owner of the stock in question, and never held itself out as such. The transfer of Kern and Blumer & Co., was only by way of pledge, and the company was bound to return the stock whenever the debt, for which it was held, should be paid. From the verdict of the jury, under the instructions of the court, it must also be accepted as a fact, that the company never consented to a transfer of the stock to its name on the books, or to that of its president, and it is undisputed that for seven years before the failure of the bank, and at least five years before its embarrassments were known to the company or the public, the stock had been standing, with the assent of Kern, Blumer & Co. and the officers of the bank, in the name of McCloskey or Ferris. During all that time, neither the registered holders nor the Warehouse Company claimed dividends or in any way acted as shareholders.

On the contrary, either Kern or Blumer & Co. took the dividends as they were paid, and to all intents and purposes controlled the stock.. There was no concealment on the part of the Warehouse Company, and no effort to deceive. It had possession of the certificates which represented the stock, with full power to control them for all the purposes of its security, but there was never a time, from the date of the original transfer by Kern on the books, until the failure of the bank, that it was or pretended to be anything else than a mere pledgee. Those who examined the list of shareholders would have found the name of McCloskey or of Ferris as the registered holder of four hundred and fifty shares. There was nothing on the books of the bank to connect them, or either of them, with the Warehouse Company, and, therefore, no credit could have been given on account of the apparent liability of the company as a shareholder. If inquiries had been made and all the facts ascertained, it would have been found that either Kern or Blumer & Co. were always the real owners of the stock, and that it had been placed in the name of the persons who appeared on the registry, not to shield any owner from liability, but to protect the title of the company as pledgee. Blumer & Co. and the bank were fully advised who McCloskey was, and of his probable responsibility, when they allowed the transfer to be made to him, and they undoubtedly knew who Ferris was when the stock was put in his name after McCloskey's death. The avowed purpose of both transfers was to give the company the control of the stock for the purposes of its security, without making it liable as a registered shareholder. To our minds there was neither fraud nor illegality in this, The company perfected its security as pledgee, without making itself liable as an apparent owner. Kern or Blumer & Co. still remained the owners of the stock, though registered in the name of others, and pledged as collateral security for their debt. They consented to the transfer, not to escape liability as shareholders, but to save the company from a liability it was unwilling to assume, and at the same time to perfect the security it required for the credit to be given. As between Blumer & Co. and the Warehouse Company, Blumer & Co. or Kern were the owners

of the stock and the company the pledgee. As between the company and the bank, or its creditors, the company was a pledgee of the stock and liable only as such. The creditors were put in no worse position by the transfers that were made than they would have been if the stock had remained in the name of Kern or Blumer & Co. who were always the real owners.

To our minds the fact that the stock stood registered in the name of Henry, President, from December 27th to January 10th, is, under the circumstances of this case, of no importance. The Warehouse Company promptly declined to allow itself to stand as a registered shareholder, because it was unwilling to incur the liability such a registry would impose. It asked that the transfer might be made to McCloskey. To this the owners of the stock and the bank assented, and from that time the case stood precisely as it would if the transfer had originally been made to McCloskey instead of Henry, President, or if Henry had retransferred to Kern or Blumer & Co., and they had at the request of the company made another transfer to McCloskey. The security of the Warehouse Company was perfected without imposing on the company a shareholder's liability. All this was done in good faith, when the bank was in good credit and paying large dividends, and years before its failure or even its embarrassment. So far as the company was concerned, the transfer was not made to escape an impending calamity, but to avoid incurring a liability it was unwilling to assume, and which it was at perfect liberty to shun.

It follows that the judgment of the Circuit Court was right, and it is consequently

*Affirmed.*

MR. JUSTICE MILLER, with whom MR. JUSTICE MATTHEWS concurred, dissenting.

I do not concur in this judgment.

I think if in any case between private persons, one of them had placed property in the hands of minors, servants, or other irresponsible persons, for the purpose of escaping the responsibility attaching to the ownership of such property, while

securing all the advantages of such ownership, it would be held to be a transaction which could not be supported on any legal or equitable principle.

It does not remove this case from the control of that principle, that the parties to be injured are the unknown creditors of the bank, who are, by this means, deprived of the right which they have to resort to a responsible shareholder for the contribution which the law gives for their benefit.

If not an actual fraud, it is a fraud upon the banking law, and was so intended to be by both the original holders of the bank shares, and the officers of the Warehouse Company, by which the latter could control the shares without the responsibility which the law attaches to the owner.

It is an easy devise to make the right which the law gives to creditors of a failing bank ineffectual, and to evade it in all cases.

JUSTICE MATTHEWS agrees with me in this dissent.