PRICE, Receiver, *v.* WHITNEY and others, Ex'rs.

*(Circuit Court, D. Massachusetts.* July 30, 1886.)

BANKS AND BANKING—NATIONAL BANK—LIABILITY OF SHAREHOLDERS—ASSESS-
MENT—TRANSFER OF STOCK.

When bank stock was sold, but not transferred on the books of the bank, and the bank afterwards failed, the executors of the person in whose name the stock stood on the books were held liable for assessment, although said stock had been paid for by a purchaser buying at the request of the president of the bank, who gave him a cashier's check for that purpose, placing the money so furnished to the credit of said purchaser on the books of the bank as a temporary loan, the intention being ultimately to transfer said shares to a third party, as part of a larger proposed investment in stock, for which funds had been placed in the hands of the president of the bank.

At Law.

*Ranney & Clark,* for plaintiff.

*E. R. Hoar,* for defendants.

COLT, J. Under the agreed statement of facts, we think the defendants must be held liable for the assessment. The shares of stock were never transferred on the books of the bank, but stood in the name of Leonard Whitney, the defendants' testator, when the bank passed into the hands of the receiver. The defendants on November 12, 1881, sold the stock through a broker to one George R. Eager, and received payment for the same. The bank suspended November 18, 1881. It resumed business again March 18, 1882, and continued until May 20, 1882, when it failed, and a receiver was appointed. It was the duty of the defendants to have seen that the stock was transferred on the books of the bank. The by-laws provide that the stock shall be assignable only on the books of the bank, and that the certificates of stock shall state upon the face thereof that the stock is transferable only upon the books of the bank, and when transferred the certificates shall be returned and canceled. Eager bought this stock at the request of Benyon, president of the bank. Benyon had received $25,000 from Gov. Coburn, of Maine, for investment in the stock of the bank, and the 100 shares sold by the defendants was intended to go to make up a part of this purchase. Eager, in payment for the stock, gave a check on the Pacific Bank, and Benyon had put to the credit of Eager, who was a depositor, from the funds of the bank, the exact amount required for the purchase of the stock. The money so furnished was carried to the credit of Eager as a temporary loan. Upon the filling of the whole order of Coburn, the design was then to have the stock transferred to him. Fifty shares more of stock were afterwards purchased towards filling Coburn's order. It further appears that the check on the Pacific Bank, which Eager gave to the broker, would not be received as a deposit by the Eagle Bank, where the broker kept his account; whereupon Eager's clerk took the check

to Benyon, who gave a cashier's check of the Pacific Bank on the Eliot Bank for the amount, which was paid. Upon receipt of the cashier's check the broker delivered to Benyon the two certificates of stock, of 50 shares each, received from defendants a power. of attorney in which the name of the attorney and date were left blank, and a certificate of the probate court of the appointment of defendants as executors. In the deposit account of Eager in the bank the check that he gave is entered as paid. The amount of money carried to the credit of Eager by Benyon, to meet the check, remained on the books of the bank as a temporary loan to the time of final failure.

Upon this state of facts it is contended by the defendants that the purchase was really made for the bank with funds furnished directly by the bank, and that it then became the duty of the bank to have the legal transfer made, and that this court has power to correct the record, and treat that which ought to have been done as already done; and, further, that a national bank can acquire a good title to its own stock either as owner or pledgee, notwithstanding the prohibition of the statute; and that neither the bank itself, nor any party except the government, can set up the illegality of the purchase or pledge to escape any liability consequent on such ownership. *Johnston* v. *Laflin*, 103 U. S. 800; *National Bank of Xenia* v. *Stewart*, 107 U. S. 676; S. C. 2 Sup. Ct. Rep. 778. But, upon the proof before us, we cannot assent to the proposition that the bank was the purchaser, and therefore the reasoning of defendants' counsel is not applicable to this case. The bank never intended to buy this stock. It was purchased, in fact, for Gov. Coburn, and he had sent $25,000 to the bank for this purpose, which the bank was to hold on special deposit until the order was filled, when the whole stock was to be transferred to him. Under these circumstances it would seem immaterial whether the stock in question was paid for by Eager's check, or by the cashier's check given by Benyon. By loaning Eager the money, and subsequently debiting his account with the check, it is manifest that Benyon was not purchasing the stock for the bank, but intended, through Eager, to fill Coburn's order.

This being a suit brought by the receiver, who represents the creditors, and it appearing that the stock was not transferred on the books of the company as provided by the by-laws, we think the defendants liable, and that judgment must be entered for plaintiff. *Davis* v. *Society of Essex*, 44 Conn. 582; *Adderly* v. *Storm*, 6 Hill, 624; *Anderson* v. *Philadelphia Warehouse Co.*, 111 U. S. 479, 483; S. C. 4 Sup. Ct. Rep. 525; *Johnston* v. *Laflin*, 103 U. S. 800, 804; *Turnbull* v. *Payson*, 95 U. S. 418; *Brown* v. *Adams*, 5 Biss. 181.