PAULY v. STATE LOAN & TRUST CO.

(Circuit Court, S. D. California. June 12, 1893.)

No. 531.

NATIONAL BANKS — INSOLVENCY — STATUTORY LIABILITY OF STOCKHOLDERS— PLEDGEE OF SHARES.

A corporation which holds certain shares of stock in a national bank as collateral security for a loan, and is carried on the registry of the bank as the holder of such stock "as pledgee," is not subject, on the bank's insolvency, to the statutory liability of a stockholder.

At Law. Action by Frederick N. Pauly, receiver of the California National Bank of San Diego, against the State Loan & Trust Company, a corporation, to recover an assessment on certain shares of the bank. Judgment for defendant.

M. T. Allen, for plaintiff.
W. P. Gardiner, for defendant.

ROSS, District Judge. The plaintiff, as receiver of an insolvent national bank, brings this suit against the defendant bank to recover the amount of an assessment on 200 shares of the stock of the insolvent bank, originally taken by the defendant as collateral security for $12,500, with interest thereon, loaned by defendant to J.

W. Collins and S. G. Havermale upon that security and upon the promissory note of Havermale, indorsed by Collins. At the time of the loan Collins was president and Havermale one of the directors of the California National Bank of San Diego, and each was the registered owner and holder of 100 shares of its stock. The bank was then carrying on its ordinary business, and, so far as known to the defendant and the public, was perfectly solvent. Upon the making of the loan, and for the purpose of securing its repayment with interest, Collins and Havermale each indorsed in blank his certificate for 100 shares of the stock in question to defendant, and thereupon, and upon the application of the defendant to the bank whose stock was thus represented and assigned, that bank took up the two certificates issued to Collins and Havermale, and in lieu of them issued to the "State Loan & Trust Co. of Los Angeles, as pledgee," two certificates for 100 shares each.

The defendant thus stood upon the registry of the national bank as the holder of 200 shares of its stock "as pledgee," and so stood at the time the bank became insolvent. The indebtedness to defendant for which the stock was given as security, though reduced in amount to $10,000, continued, and the question presented for decision is whether, under such circumstances, defendant is liable for an assessment upon the 200 shares of stock for the benefit of the creditors of the insolvent bank. The statute providing for the association of persons for carrying on the business of banking provides, among other things, as follows:

"The capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association. Every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares; and no change shall be made in the articles of association by which the rights, remedies, or security of the existing creditors of the association shall be impaired." Rev. St. § 5139.

By section 5151 of the Revised Statutes it is declared:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares,"

--With certain exceptions, not applicable to the present case.

Section 5152 is as follows:

"Persons holding stock as executors, administrators, guardians, or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be if living, and competent to act and hold the stock in his own name."

The precise question involved was not presented in any of the numerous cases that have been cited by counsel. But, in my opinion, the doctrine of the case of Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. Rep. 525, carried to its logical conclusion, exempts the defendant from the liability with which it is sought to be

charged. In that case the supreme court, while declaring it to be well settled that one who allows himself to appear on the books of a national bank as an owner of its stock is liable to the creditors as a shareholder, whether he be the absolute owner or pledgee only, and that, if a registered owner, acting in bad faith, transfers his stock in a failing bank to an irresponsible person, for the purpose of escaping liability, or if his transfer is colorable only, the transaction is void as to creditors, and that it is also true that the beneficial owner of stock registered in the name of an irresponsible person may, under some circumstances, be liable to creditors as the real shareholder, said it knew of no case that held that a mere pledgee of stock is chargeable where he is not registered as owner.

In that case the Philadelphia Warehouse Company had loaned money on certain shares of the stock of the First National Bank of Allentown, which afterwards became insolvent. One William Kern, who was a member of the firm of W. H. Blumer & Co., and to which firm the loan was made, was the registered holder of 490 shares of the stock of the bank, and as security for the loan he caused 450 shares standing in his own name on the books of the bank to be transferred, and a certificate to be issued therefor in the name of T. Charlton Henry, president,—Henry being president of the warehouse company. As soon as that fact became known to the directors and members of the executive committee of the company, they deemed it inadvisable to have the stock stand in the name of the president, and accordingly the certificate was thereupon transferred, under the seal of the company and the signatures of its president and secretary, to Denis McCloskey, an irresponsible person, and a porter in its employ. With this assignment the certificate was presented by the company to the bank, with the request for the issuance of a new certificate in the place of it in the name of McCloskey, and accordingly the stock was transferred to McCloskey on the books of the bank, and a new certificate issued in his name and delivered to the warehouse company. McCloskey never had possession of the certificate, and at the request of the company he executed in blank an irrevocable power of attorney for the sale and transfer of the stock. He subsequently died, and after his death the stock was transferred on the books of the bank, at the request of the company, to another one of its employes, who was also an irresponsible person, and who indorsed thereon an irrevocable power of attorney for its transfer, and in whose name it stood at the time of the failure of the bank. All of this was done with the avowed purpose on the part of the company to avoid incurring liability as a shareholder of the bank. The circumstances of the case were such as to satisfy the court that the company acted throughout the transaction in good faith, and without any fraudulent intent.

Such being the facts, the court declared the law to be that the warehouse company never was the owner of the stock; that its transfer was only by way of pledge, and that the company was bound to return it whenever the debt for which it was held should be paid; that there was never a time, from the date of the original

transfer by Kern on the books until the failure of the bank, that it was or pretended to be anything else than a mere pledgee. "Those who examined the list of shareholders," said the court, "would have found the name of McCloskey or of Ferris as the registered holder of four hundred and fifty shares. There was nothing on the books of the bank to connect them, or either of them, with the warehouse company, and therefore no credit could have been given on account of the apparent liability of the company as a shareholder. If inquiries had been made, and all the facts ascertained, it would have been found that either Kern or Blumer & Co. were always the real owners of the stock, and that it had been placed in the name of the persons who appeared on the registry, not to shield any owner from liability, but to protect the title of the company as pledgee. Blumer & Co. and the bank were fully advised who McCloskey was, and of his probable responsibility, when they allowed the transfer to be made to him, and they undoubtedly knew who Ferris was when the stock was put in his name after McCloskey's death. The avowed purpose of both transfers was to give the company the control of the stock for the purposes of its security, without making it liable as a registered shareholder. To our minds, there was neither fraud nor illegality in this. The company perfected its security as pledgee, without making itself liable as an apparent owner. Kern or Blumer & Co. still remained the owners of the stock, though registered in the name of others, and pledged as collateral security for their debt. They consented to the transfer, not to escape the liability as shareholders, but to save the company from a liability it was unwilling to assume, and at the same time to perfect the security it required for the credit to be given. As between Blumer & Co. and the warehouse company, Blumer & Co. or Kern were the owners of the stock, and the company the pledgee. As between the company and the bank or its creditors, the company was a pledgee of the stock, and liable only as such. The creditors were put in no worse position by the transfers that were made than they would have been if the stock had remained in the name of Kern or Blumer & Co., who were always the real owners. To our minds, the fact that the stock stood registered in the name of Henry, president, from December 27th to January 10th, is, under the circumstances of this case, of no importance. The warehouse company promptly declined to allow itself to stand as a registered shareholder, because it was unwilling to incur the liability such a registry would impose. It asked that the transfer might be made to McCloskey. To this the owners of the stock and the bank assented, and from that time the case stood precisely as it would if the transfer had originally been made to McCloskey instead of Henry, president, or if Henry had retransferred to Kern or Blumer & Co., and they had, at the request of the company, made another transfer to McCloskey."

It seems to me there was stronger ground for holding the warehouse company liable in the case from which the quotation has been made than there is for holding the defendant in the present

case liable. Here it is not pretended that there was any fraudulent conduct on the part of the defendant. There that claim was made, and it constituted the ground of the dissenting opinion of two of the justices of the court. If the holding of the stock as pledgee rendered the warehouse company liable under the statute, it could not have relieved itself of that liability by causing the stock to be placed upon the books of the bank, and a certificate therefor to be issued in the name of one of its irresponsible employes; for the same case declares it to be well settled that a liability incurred cannot be so avoided. The warehouse company was without any liability, because, being pledgee only, it was not the real owner of the stock, and it was not liable as the apparent owner because it did not appear upon the records of the bank as such apparent owner; and hence no one could have been misled by its acts.

Applying this reasoning to the case at bar, the defendant bank must be held not liable. If, as held in Anderson v. Warehouse Co., a pledgee is not liable because not the real owner of the stock, it is manifest that the record of the truth upon the books and certificate of the bank that the stock is held in pledge cannot render such pledgee liable. Any and every person dealing with the bank is thereby apprised that the pledgee only holds the stock as security for some debt or obligation, and that the real owner of it is the pledgor, to whom he must look for the statutory liability.

It results that there must be judgment for the defendant, and it is so ordered.