### WILSON v. MERCHANTS' LOAN & TRUST CO. OF CHICAGO, ILL.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 612.

1. APPEAL—SPECIAL FINDINGS—AGREED STATEMENT OF FACTS.

　　An agreed statement of facts on which a judgment is rendered will be treated on appeal as the equivalent of a special finding as to the ultimate facts stated therein, but as to the inferences to be drawn from facts stated which are merely evidentiary the general finding is conclusive.

2. NATIONAL BANKS—ASSESSMENTS ON STOCKHOLDERS—LIABILITY OF PLEDGEE.

　　A pledgee of stock of a national bank, with a power of attorney to have the shares transferred on the books, so long as he holds the shares as security, without intending to assume liability as a stockholder, cannot be treated as one, and subjected to an assessment, under Rev. St. § 5151, on the insolvency of the bank, although he has caused the shares to be transferred to a third person under an agreement that they are still to be held as security for the debt.

3. SAME—ACTION BY RECEIVER—BURDEN OF PROOF.

　　Defendant held shares of stock in a national bank as collateral security. The bank was subsequently consolidated with another national bank, and

stock of the latter was issued in lieu of the stock of the former. Defendant surrendered the shares it held, and caused stock in the consolidated bank to be issued in lieu thereof in the name of an employé, but continued to hold the same as security for the original debt. *Held*, in an action by the receiver of the consolidated bank to recover an assessment from defendant, in which he alleged that defendant had purchased and become the owner of the stock, on the theory that its having caused the substituted stock to be issued amounted to a conversion of the collateral, that the burden rested on the plaintiff to prove that the exchange was made without the consent of the pledgor.

In Error to the District Court of the United States for the Northern Division of the Northern District of Illinois.

This action was brought by E. T. Wilson, as receiver of the First National Bank of Helena, Mont., to recover of the Merchants' Loan & Trust Company, a banking corporation of Illinois, an assessment of $100 per share on one hundred and twenty shares of the stock of that bank, of which shares the bill alleges the trust company to have become the purchaser and owner at some time between December 1, 1894, and June 1, 1895. The pleas are: First, nil debit; second, denial of purchase and ownership of stock in the bank; and, third, that the 120 shares of stock were, and always had been, held in the name of P. C. Peterson, as trustee, and as security for the payment of the promissory note of Shirley C. Ashby to the trust company. Trial by jury was waived by agreement in writing, and the court made a general finding of the issues for the defendant, and, having overruled a motion for a new trial, entered judgment upon the finding.

The evidence in the case, it appears by the bill of exceptions, consisted wholly of an agreed statement of facts, in substance as follows: On the 15th day of April, 1893, Shirley C. Ashby, then president of the Helena National Bank of Helena, Mont., borrowed of the trust company $12,000, for which he gave his promissory note payable on the ensuing 16th day of August, and as collateral security delivered to the trust company a certificate, assigned in blank, representing 150 shares of the capital stock of the bank. The note recited the fact of the pledge, and contained authority, on the usual conditions, for the sale of the shares, and the application of the proceeds to the payment of the debt and expenses. On July 26th following, Ashby made an assignment of his property, including the pledged shares, for the benefit of his creditors, to Robert S. Ford, of Grand Falls, Mont., and resigned the presidency of the bank; E. D. Edgerton succeeding him in that office. There followed correspondence between the trust company and Edgerton, as president of the bank, by which the latter was told how the 150 shares were held by the trust company, and the trust company was informed of a proposed consolidation with the First National Bank of Helena, but that the stock of the Helena National Bank had been reduced from $500,000 to $400,000, and consequently the 150 shares would be reissued in the same amount, less twenty per cent.; and on December 26, 1894, the vice president of the trust company wrote to Edgerton, president, as follows: "I inclose herewith certificates of stock for 150 shares, for which please send me two certificates of 50 shares each, and one for 20 shares, in the name of P. C. Peterson. Mr. Peterson's address is 'care of this bank,' and we will be very glad to furnish you with proxies if you will inclose us blanks for that purpose. Where can Ashby be found? In a matter of this kind, we would like very much to have him consent to our action." The certificate was inclosed as stated, and under date of December 31, 1894, Edgerton, as president, responded as follows: "In your letter you instruct us to issue two fifty and one twenty certificates. Undoubtedly, this was under the assumption of the retirement of one hundred thousand dollars I spoke of in my letter. While we have the order, we have never acted on it by making the formal change, inasmuch as about that time we arranged this consolidation, and thought it useless to bother our people twice. We have issued this stock just as it stands on our books. But under the consolidation the new issue of the First National Bank will be as you suggest,—one hundred and twenty shares. Mr. Ashby is still here in Helena, but I doubt if you could get his concurrence on anything, as he has apparently

gone all to pieces." Subsequently, and before April 22, 1895, the proposed consolidation was consummated, with the consent and approval of the comptroller of the currency, the basis being an allowance to the stockholders of the Helena National Bank of eighty per cent. of the face value of their stock in the stock of the consolidated bank, which was named the First National Bank of Helena; and on or about May 17, 1895, the certificates for 150 shares in the Helena National Bank standing in the name of Peterson were surrendered by direction of the trust company, and in place thereof new certificates for 120 shares in the consolidated bank were issued to Peterson. "These last-named certificates," to quote the language of the agreement, "have ever since been, and now are, in the possession and control of the defendant, and are held by it in the same way and for the same purpose as the certificates for one hundred and fifty shares of the capital stock of the Helena National Bank were originally held, except as the conditions may have been changed by the facts hereinbefore stated, but that neither the defendant nor the said Peterson ever took any part in the management of either of said banks, or participated in the administration of their affairs." There followed a correspondence between the trust company and Ashby's assignee, commencing with the letter of October 14, 1895, in which the company inquired of Ford whether a sale of the stock was possible, to which three days later Ford replied, stating certain matters concerning Ashby and his litigation, and concluding as follows: "I have never desired you to make a forced sale of the stock, but felt during the twenty-six months past you might have found sale at a fair price, and trust you will try and secure a fair price before parting with it. I have never desired you to make a forced sale, though it lies in your power to do so." Under date of January 4, 1896, Ford wrote again, saying: "I am now trying to get an offer on the forty-eight shares I hold. Should I meet with an offer, will let you know the price offered. I take it you still hold this stock, and so held same when I sent you a dividend of $1,680, being 14% of the amount of your claim, or [at] date of assignment, July 26, 1893. Kindly let me know if you still hold this stock, and whether 150 shares of the Helena National Bank, or 120 shares of the First National Bank, which number of shares would be issued to you on transfer." On January 7, 1896, the trust company responded: "The 150 shares of Helena National Bank stock which we held as collateral to the Ashby loan has been exchanged for 120 shares of First National Bank stock. This stock is not in our name, but is controlled by us. We shall be glad to sell it if we can get what seems to us a reasonable price. Please advise us of any offer you may get for it." Peterson, at the time of the transfer of the stock to him, was a clerk in the employ of the trust company, and was without pecuniary responsibility. The shares in the Helena National Bank were directed to be placed in the name of Peterson, and the new certificates of consolidated stock were issued to him by direction of the trust company, in pursuance of a custom and policy of that company to avoid liability as a registered shareholder of corporate stocks. The Ashby note is still held by the trust company, and, excepting two credits of $1,680 and $960, paid December 12, 1895, and October 6, 1896, by the assignee, remains unpaid. The facts of the suspension of the bank, the appointment of a receiver, the assessment of $100 per share on the stock, notice to shareholders, and demand of payment are all stated in detail.

Three errors are assigned,—the finding of the issues for the defendant, the overruling of the motion for a new trial, and the entry of judgment in favor of the defendant.

D. A. Holmes, for plaintiff in error.

John N. Jewett, for defendant in error

Before WOODS, Circuit Judge, and BUNN and ALLEN, District Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is urged by the defendant in error that the specifications of error call for an inquiry into issues of fact, and present no question

for review. The response for the plaintiff in error is that the agreed statement of facts is to be treated as a special finding, on which the question arises whether the facts stated are sufficient to sustain the judgment rendered. It is well enough settled that an agreed statement of facts, on which judgment has been rendered, will be taken as the equivalent of a special finding. Supervisors v. Kinnicott, 103 U. S. 554, 26 L. Ed. 486; Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373; St. Louis v. Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380. "But, manifestly," as we said in Burnham v. Railway Co., 46 U. S. App. 670, 23 C. C. A. 677, 78 Fed. 101, "it is necessary that the ultimate facts be stated, and not evidence, merely, from which the facts to be established may be inferable." See, also, Mutual Reserve Fund Life Ass'n v. Curtis' Adm'r, 56 U. S. App. 586, 29 C. C. A. 354, 85 Fed. 586. The agreement before us, to a large extent, contains a statement of ultimate facts,— sufficient, the plaintiff in error insists, to justify a judgment in his favor,—but it consists in part of letters written by or to the defendant in error, which, in so far as their contents are pertinent to the issues, are not conclusive, but only evidentiary.

The decisions of the supreme court touching the liability of shareholders for assessments upon the stock of national banks were reviewed, and the principles deducible from them comprehensively stated, in the recent opinion of that court in Pauly v. Loan & Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844. While the rule is well established "that the real owner of the shares of the stock of a national banking association may in every case be treated as a shareholder, within the meaning of section 5151" of the Revised Statutes, it is also true, as there stated, and as was decided in Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525, 28 L. Ed. 478, "that if one receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and, being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another, under an agreement that they are to be held as security for the debt due from the real owner to his creditor,—the latter acting in good faith, and for the purpose only of securing the payment of that debt without incurring the responsibility of a shareholder,—he (the creditor) will not, although the real owner may, be treated as a shareholder, within the meaning of section 5151." The facts in Anderson v. Warehouse Co. differ but little from the facts disclosed in this record, and this case is governed by that, unless the one distinction insisted upon by the plaintiff in error must be recognized, namely, that the turning of the shares in the Helena National Bank into shares of the First National Bank of Helena was effected without the consent or authority of Ashby, the pledgor, and therefore was a wrongful conversion, which made the trust company the absolute owner of the stock, and liable for the assessment upon it, notwithstanding its being taken in the name of Peterson. This proposition is subject to more than one objection. In the first place, if the change was made

without Ashby's consent or authority, it was nevertheless a matter of election on his part whether he would ratify it; and, in the second place, it is not shown by the statement of facts that the consolidation and the substitution of one stock for the other were not effected by his authority, or were not afterwards ratified by him, nor that they were not effected by the authority of, or afterwards ratified by, his assignee, Ford. Neither is it shown that the assignee, under the law, and by order of the court, and by the consent of Ashby, did not have authority to consent to the substitution. The letters show that the trust company desired Ashby's consent, and that Edgerton did not think it likely that he would give it, but that does not prove that it was not in fact obtained. It is fairly inferable from the letters of the assignee that before hearing from the trust company, and presumably from the beginning, he knew of the scheme of consolidation; and it may well be supposed that he approved it. The fact of subsequent consent and ratification by him is quite clear. It was alleged in the declaration, and the plaintiff in error therefore had the burden of proof, that the trust company "purchased and became the owner of 120 shares of the capital stock of the said First National Bank of Helena." To establish that averment it was necessary to show that the original shares, confessedly held as collateral, were wrongfully converted into the new stock without the consent of the pledgor; but the fact is not so stated in the agreement, the letters and other circumstances all indicate the contrary, and the general finding of the court is conclusive of the question. The judgment below is affirmed.