## HIGGINS v. FIDELITY INS., TRUST & SAFE-DEPOSIT CO.

(Circuit Court of Appeals, Third Circuit.   April 29, 1901.)

### No. 10.

NATIONAL BANKS—STOCKHOLDERS SUBJECT TO ASSESSMENT—PLEDGEE.

A pledgee of shares of stock in a national bank as collateral security for a debt due him from the owner, with power of attorney to transfer the same on the books of the bank, does not become a stockholder, and liable to an assessment as such on the failure of the bank, contrary to his intention, by causing the stock to be transferred into the name of an employé, who holds it for the benefit of all parties interested, nor by any other action which is required or is proper for the protection of both his own interests and those of the pledgor, and not inconsistent with his retention of the stock merely as pledgee, such as paying an assessment required by the comptroller to make good the impaired capital of the bank, and charging the amount to the pledgor.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

John G. Johnson and Asa W. Waters, for plaintiff in error.
Richard C. Dale, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge.   This was an action brought by George H. Higgins, receiver of the Keystone National Bank of Erie, an insolvent national banking association, against the Fidelity Insurance, Trust & Safe-Deposit Company, to recover the amount of an assessment on stockholders of the bank, made under section 5151 of the Revised Statutes. upon the allegation that the defendant was a shareholder of the bank at the time of its failure, and thus liable to creditors for the assessment sued for.   It appears that on November 15, 1899, the defendant company made a loan of $15,000 to the firm of Delamater & Co. (in renewal of prior loans), for which Delamater & Co. gave to the defendant their note for $15,000, dated November 15, 1890, payable in 60 days, and as collateral security for the payment of this note deposited with the defendant 230 shares of the capital stock of the Keystone National Bank of Erie, each share being of the par value of $100; 130 shares thereof standing in the

name of George B. Delamater, and 100 shares thereof standing in the name of George W. Delamater. With the certificates of the stock thus deposited, blank powers of attorney to assign and transfer the same, signed by George B. Delamater and George W. Delamater, respectively, were delivered to the defendant. On December 5, 1890, the firm of Delamater & Co. made a general assignment for the benefit of creditors, On January 10, 1891, the defendant sent to the Keystone National Bank of Erie the original certificates so deposited as collateral, with direction to the bank to transfer the same into the name of W. W. Hand, who was a clerk in the employ of the defendant. This transfer was made on the books of the bank, and new certificates were issued in the name of W. W. Hand, dated January 15, 1891, and were transmitted by the bank to the defendant. Hand signed a transfer in blank on the back of each of the new certificates, and in that form they were retained by the defendant. On March 16, 1892, the comptroller of the currency, finding that the capital of the bank was impaired, ordered an assessment of 25 per centum on the capital of the bank to make good the deficiency. The defendant paid this assessment, namely, $5,750, on the above-named 230 shares of stock, and charged the same to Delamater & Co. as an additional advance. On December 22, 1892, pursuant to section 5143 of the Revised Statutes of the United States, with the approval of the comptroller of the currency, the capital stock of the bank was reduced from $250,000 to $150,000, divided into 1,500 shares of $100 each. On January 24, 1893, the defendant sent to the bank the certificates which had been issued to W. W. Hand for the 230 shares, and on February 7, 1893, the defendant received from the bank a certificate in the name of W. W. Hand for 172½ shares, being the reduced number. Hand signed a transfer in blank on the back of the new certificate, and in that form it remained in the defendants' possession. On one or more occasions Hand gave a proxy to vote at the annual meeting of stockholders, and he also gave a proxy to vote at the special meeting of the stockholders in favor of the reduction of the capital stock. On June 20, 1897, the Keystone National Bank of Erie closed its doors, and on July 26, 1897, the comptroller of the currency appointed a receiver of the bank. On November 3, 1897, the comptroller ordered an assessment of 100 per centum on the stockholders. The court submitted to the jury the question of fact whether or not the defendant had changed its relation to the stock from that of pledgee to that of owner. The question so submitted was thus stated by the learned trial judge in his charge:

"The question is whether, before this Keystone National Bank failed, the defendant company, the Fidelity Trust Company, of this city, was the real owner of these shares of stock, or whether it continued to be the pledgee of the stock,—whether the stock had become theirs in the sense in which we use in ordinary speech the word 'owner,' or whether it had been continued to be pledged to them as collateral security for the payment of the note which has been offered in evidence."

Again, the learned trial judge said to the jury:

"The whole subject, as I regard it,—for the present, at least,—is a question of fact; and that question I repeat is whether the defendant company, the

Fidelity Trust Company, was, at the time when this bank went into the hands of the receiver, the real owner of these shares of stock, or whether it continued to hold them as collateral security for the payment of the note originally given by the Delamaters."

The verdict of the jury was in favor of the defendant, and subsequently the court entered judgment for the defendant on the verdict.

Undoubtedly, this stock originally was pledged by the owners, the Delamaters, to the defendant company, as collateral security. Wrongful conversion by the defendant is negatived by the verdict. Upon the finding of the jury it must be accepted as established that the defendant did not intentionally change its relation to the stock. This, we think, is very clear under the uncontradicted evidence. Did the defendant do anything whereby, contrary to its intention, it became the absolute owner of the stock? The payment of the pro rata share of the assessment ordered by the comptroller of the currency to make good the impairment of the capital stock of the bank was for the protection and benefit of all interested in the pledged stock, and was entirely consistent with the preservation of the pledge. The assent to the reduction of the capital stock of the bank, made agreeably to the statute, under the approval of the comptroller of the currency, did not work any prejudice whatever to the pledgors or their assignees, and we do not see how it could change the relation of the defendant to the stock. It is said, however, that the defendant had no right to transfer the stock to W. W. Hand without the express consent of the Delamaters or their assignees. But we agree with the views expressed by the circuit court that the delivery by the Delamaters of the certificates with the blank powers to assign and transfer them implied their consent to such a transfer of the stock as might be deemed reasonably necessary for the protection of the defendant. The transfer to Hand was not in hostility to the pledge, but subservient to it. He held the legal title for the benefit of all interested in the stock,—the pledgee first, and then the pledgors and their assignees. Moreover, neither the pledgors nor their assignees are complaining. They are not parties here. This suit is by the receiver of the bank against the defendant company to subject it to the personal liability imposed upon shareholders by section 5151 of the Revised Statutes of the United States. Does this record disclose, as against the defendant, any ground for such liability? The court below answered the question negatively, and, we think, rightly. This conclusion accords with the decisions of the supreme court of the United States in Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525, 28 L. Ed. 478, and in Pauly v. Trust Co., 165 U. S. 606, 619, 17 Sup. Ct. 465, 41 L. Ed. 844. The stock in the Keystone National Bank of Erie owned by the Delamaters, and by them pledged to the Fidelity Insurance, Trust & Safe-Deposit Company, never stood on the registry or books of the bank in the name of the company, and in fact the company was mere pledgee. In Anderson v. Warehouse Co., supra, Chief Justice Waite said:

"It is also undoubtedly true that the beneficial owner of stock registered in the name of an irresponsible person may, under some circumstances, be liable to creditors as the real shareholder; but it has never, to our knowledge, been

held that a mere pledgee of stock is chargeable where he is not registered as owner."

And it was there ruled that a pledgee of national bank stock, who was unwilling to assume the liability of a registered shareholder, acting in good faith, and with no fraudulent intent, might lawfully cause the pledged stock to be transferred to and registered in the name of an irresponsible employé for the purpose of perfecting the security of the pledgee without incurring a shareholder's liability. Here the defendant company acted in perfect good faith. At the time of the transfer to Hand, the Keystone National Bank of Erie was in good credit. Moreover, the defendant was under no personal liability, for it was not registered as owner. The facts of the defendant's case, we think, bring it clearly within the principle laid down in Pauly v. Trust Co., supra, namely, that, if one receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and, being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another under an agreement that they are to be held as security for the debt due from the real owner to his creditor, the latter acting in good faith, and for the purpose only of securing the payment of that debt without incurring responsibility of a shareholder, he (the creditor) will not, although the real owner may, be treated as a shareholder, within the meaning of section 5151. We are not able to see that any one of the numerous assignments of error is well founded. Upon the whole case we are of opinion that judgment in favor of the defendant was rightly entered. The judgment of the circuit court is affirmed