[No. 4326.]

## MARIA DE LOS ANGELES MAJORS *v.* HENRY COWELL *et al.*

STATUTES RELATING TO PRACTICE IN COURTS.—Statutes of the several States, regulating remedies by means of judicial proceedings, are to be understood as intended to apply only to proceedings in the courts of the particular State where adopted, unless it clearly appears that they were intended to have a wider scope.

STATE PRACTICE ACT AND FEDERAL COURTS.—A State statute regulating remedies and proceedings in courts, will not be construed as furnishing remedies to suitors in federal courts unless it clearly appears from the statute that it was intended to have that effect.

LIS-PENDENS.—The clause in the Practice Act of this State relating to the filing of a *lis pendens* does not apply to suitors, except in our State courts.

LIS PENDENS IN FEDERAL COURTS.—Neither the statute of this State in respect to the filing of a *lis pendens*, nor any equivalent proceeding, has been incorporated into the rules of the Supreme Court of the United States as applicable to suits in equity, nor into the rules of the Circuit Court of the United States for the Ninth Circuit.

FINDING OF FACTS.—Under the Code of Civil Procedure the findings of fact must support the judgment, and no facts in issue will be presumed to have been proved or found except those which are found.

LIS PENDENS IN HIGH COURT OF CHANCERY IN ENGLAND.—Under the prac-
tice of the High Court of Chancery in England, a suit in equity does not
give constructive notice to parties purchasing land from a defendant,
until process has been served or waived by a voluntary appearance.
The mere filing of a complaint does not constitute a *lis pendens.*

WHO ARE BOUND BY JUDGMENT.—One who is not a party to an action, but
who is interested in the matter determined by the judgment, does not
become a party so as to be bound by the judgment by becoming a party
to an appeal prosecuted therefrom and paying his portion of the ex-
penses.

APPEAL from the District Court, Twentieth Judicial Dis-
trict, County of Santa Cruz.

On the fourth day of February, 1860, a patent was issued
by the United States to Juan Bolcoff and Francisco Bolcoff,
for a Mexican grant, called the Refugio Rancho, lying in
Santa Cruz county. The patent was based on a grant made
by the Mexican government to Jose Bolcoff, the father of
said Juan and Francisco, in the year 1840. The two sons
presented the grant to the United States Land Commis-
sioners, and it was, by the Commissioners, and by the
United States District Court, confirmed to them as the suc-
cessors in interest of their father.

On the third day of February, 1865, Charles E. Norton
filed a bill in equity in the Circuit Court of the United
States for the Ninth Circuit, District of California, against
Jose Bolcoff, Moses A. Meader, Albion P. Jordan, Isaac E.
Davis, Thomas Courtis, John Wilson, The Santa Cruz
Petroleum Oil Works Company, and others, who were in
possession of, and claiming an interest in, said rancho,
alleging that he had purchased certain interests in the
rancho from three sisters, named Castro Maria Candida,
Maria de Los Angeles, and Maria Jacinta, or from their
successors in interest; and that in April, 1839, said three
sisters presented a petition to the Mexican Government for
a grant of said rancho, and that, after due proceedings, a
concession thereof was made to them, and that they were
put in possession thereof by the proper officers, and that
the *expediente* was in their name; but that said Jose Bolcoff,
who had married Maria Candida, one of the sisters, after-

wards, and in the year 1840, fraudulently represented to the Mexican Governor of California that it had been agreed by the three sisters that the final grant or *titulo* resulting from the petition and *expediente* should be made to him; and that the grant, by reason of said representations was made to said Jose, and that, after the grant was made, said Jose Bolcoff had fraudulently erased from the papers connected with the expediente the names of said sisters and substituted his own, and that the grant thus made to Bolcoff was the one upon which the confirmation was based and the patent was issued; and that the defendants, other than Jose Bolcoff, claimed title to the rancho under said grant to Bolcoff and the patent, and praying that the defendants be adjudged trustees of the legal title for the benefit of the complainant. The defendants appeared and claimed title to different parts of the rancho in severalty under the patent to Bolcoff, or under two of the sisters. On the fourth day of March, 1865, the plaintiff Norton filed with the recorder of the county of Santa Cruz a *lis pendens.* On the fourth day of December 1865, A. P. Jordan and Isaac E. Davis filed their answer in the suit; and it does not appear from the findings of fact that they had been served with summons or had appeared in the action. The Circuit Court found the facts stated in the complaint true and, on the 28th day of October, 1867, a final decree was entered. The Court found that all of the purchasers from the Bolcoffs bought with notice of the sisters' rights, and held that they were trustees holding the legal title for the sisters and their successors in interest. This action was brought to obtain a partition of the northern portion of said rancho represented by the following diagram:

Tract A contains 200 acres; tract B contains about 600 acres; tract C contains 2300 acres and tract D contains 500

acres.  On the third day of October, 1853, Juan and Francisco Bolcoff, together with their father Jose, conveyed to Albion P. Jordan the whole of tract A, and Jordan, on the first day of July, 1865, conveyed to Henry Cowell, one of the defendants here, an undivided half of tract A; Jose, Juan and Francisco, on the tenth day of July, 1855, conveyed to John H. Watson, tract B; Watson, on the first day of April, 1856, conveyed it to Isaac E. Davis and Albion P. Jordan; and Jordan, on the first day of July, 1856, conveyed to said Cowell the undivided half of tract B.  Cowell purchased without actual notice of the pendency of the suit of Norton in the Circuit Court of the United States, but intermediate the filing of the *lis pendens* and the filing of the answer of Jordan from whom he purchased.  He also bought in good faith and for a valuable consideration.

The plaintiff was one of the three sisters Castro.  The same parties were made defendants here who were defendants in the suit in the Circuit Court, together with such other parties as claimed interests in the property.  The court below refused to recognize the title of Cowell which he acquired from Jordan, and which originated in the patent granted to the Bolcoffs, and he appealed from the interlocutory judgment.  The other facts are stated in the opinion.

*Joseph J. Skirm*, for the Appellant.

The action of *Norton* v. *Meader et al.*, was brought and determined in the Circuit Court of the United States for California, and no act of Congress or of this State required or permitted a notice of action or of a *lis pendens* in equity in the courts of the United States to be filed in the office of a county recorder.

The doctrine of constructive notice of a *lis pendens* is limited to the courts of justice of the State or sovereignty where the purchaser resides or the lands are situated. (Story's Eq. Jur. Sec. 405.)

The filing of the complaint does not by itself create a *lis pendens* of which the subsequent purchaser has constructive notice, but there must be an issuance and actual service of

process upon the vendor before there can exist a *lis pendens* binding the purchaser by constructive notice thereof. (*Games* v. *Stiles*, 14 Peters' U. S. S. C. R. 322.)

*Wilson & Wilson and W. W. Cope,* also for Appellant.

*Logan & Younger and King & Rodgers,* for the Respondent.

.The alleged principle that there is no *lis pendens* till service of subpœna is not universal and not recognized in English Chancery practice, which United States courts adopt; but the *lis pendens* begins with the filing of the bill. (Goldsmith's Proc. in Equity, p. 355; *Garth* v. *Ward*, 2 Atkyns, 174; *Drew* v. *Norblury*, 3 Jones & L. 282; S. C., 9 .Irish Eq. R. 176.

The leading case in America favoring the principle is *Murray* v. *Ballou*, 1 Johns Ch. 576.

By the Court, CROCKETT, J.:

The questions presented by this record are: first, Whether the statute of this State regulating the filing of a notice of *lis pendens* and defining the effect thereof, was intended to apply to actions pending in the Circuit Court of the United States. Second, Whether the statute has been adopted as a rule of practice in equity cases, by the rules prescribed by the Supreme Court of the United States, or by the rules of the Circuit Court for the Ninth Circuit. Third, Whether Cowell, at the time of the conveyance to him, was affected with constructive notice of the pendency of the action of *Norton* v. *Meader et al*, independently of the notice of *lis pendens* filed in that action. Fourth, If Cowell was not a party to that action, whether he became bound by the judgment by uniting in the appeal, and paying his proportion of the costs, on the affirmance of the decree. These points will be noticed in their order. On the first point, it will be sufficient to observe that ordinarily, statutes of the several states regulating remedies by means of judicial proceedings are to be understood as intended to apply only to proceedings in the courts of the particular State, unless it clearly appears that they were intended to have a wider

scope; and in the absence of a clearer expression of the legislative will to that effect, it is not to be inferred, waiving the question of power, that a State statute was intended to furnish remedies to suitors in the Federal courts, whose powers are derived wholly from the Constitution and laws of the United States. There is nothing in our statute to indicate that it was intended to have that effect, or to afford a remedy except to suitors in our own courts.

Nor do we find that our statute in respect to the filing of a notice of *lis pendens,* or any equivalent proceeding, has been incorporated into the rules promulgated by the Supreme Court of the United States as applicable to suits in equity; and the rules of the Circuit Court for the Ninth Circuit, are likewise silent on that subject. This brings us to the question, whether it sufficiently appears from this record, that Cowell was a formal party to the action of *Norton* v. *Meader et al.,* and if not, whether he was affected with constructive notice of the pending of the action, independently of the notice filed with the recorder.

The Court does not find that Cowell was a formal party to the action; but it is contended, that in support of the judgment, and in the absence of an express finding on that point, we should presume a finding to that effect. But under our present Code of Civil Procedure, as we have repeatedly held, the findings must support the judgment, and no facts in issue will be presumed to have been proved except those which are found. We must therefore assume, for the purposes of this decision, that Cowell was not a formal party to the action, and the Court finds that he was a purchaser for a valuable consideration, and had no actual notice of the pendency of the action, when he took the conveyance from Jordan. The findings further show, that Jordan did not file his answer in that action until long after the conveyance to Cowell, nor does it appear, that he was ever served with process, or in any manner appeared to the action, prior to his answer. The case, then, as presented by the record, is, that after the complaint in *Norton* v. *Meader et al,* (in which Jordan was named as a defendant) was filed, but before there was any service of process on him, and before he had appeared to the ac-

*tion*, he conveyed the land in controversy to Cowell, who was a purchaser for a valuable consideration, without actual notice of the pendency of the action.   Under these circumstances; was there a *lis pendens* in a legal sense, and if so, must Cowell be deemed to have had constructive notice of it?  By Rule 89, in equity causes, as promulgated by the Supreme Court of the United States, it is provided that the Circuit Courts may make any further rules and regulations for the practice, proceedings, and process, in their respective districts, not inconsistent with the rules prescribed by the Supreme Court; and Rule 90 provides, that "in all cases where the rules prescribed by this Court, or by the Circuit Court do not apply, the practice of the Circuit Court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may reasonably be applied, consistently with the local circumstances and local. convenience of the district where the Court is held; not as positive rules, but as furnishing just analogies to regulate the practice."

We have already seen that neither the rules prescribed by the Supreme Court, nor those of the Circuit Court of the Ninth Circuit, define what shall constitute a *lis pendens* of which third persons shall be deemed to have had constructive notice.   We must therefore refer to the practice of the High Court of Chancery in England for a solution of the question.   As we understand it, the rule in that court and at common law is, "that a suit in equity does not operate as constructive notice until the service of process," or until the service has been waived by a voluntary appearance.   (Freeman on Judgments, sec. 195, and cases cited.) The mere filing of a complaint, without the service of process or a voluntary appearance, does not constitute a *lis pendens*.   If we are correct in this conclusion, there was no *lis pendens* in *Norton* v. *Meader et al.*, when Cowell took his conveyance from Jordan, of which he could have been affected with constructive notice, and, as he was a purchaser for a valuable consideration, without actual notice, he was not bound by the judgment in that action, unless he became bound by uniting in the appeal.   But if he would not

otherwise have been affected by the judgment, it is not perceived how he could have lost his rights by prosecuting a fruitless appeal.  If there had been no appeal, it is clear he would not have been bound by the judgment, and he was in no worse position after the judgment was affirmed.

The interlocutory judgment determining the rights of the parties to tracts C and D, and the order denying a new trial as to the same, affirmed; and the judgment and order as to tracts A and B, reversed, and the cause remanded for new trial.

Mr. Chief Justice WALLACE did not express an opinion.