ANDREWS et al. v. NATIONAL FOUNDRY & PIPE WORKS, Limited.

CITY OF OCONTO v. SAME.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

Nos. 283, 286.

1. SPECIFICATIONS OF ERROR.
 The specifications of error in a case brought up by appeal should be, not that the evidence shows this or that, but that in this or that particular, separately stated, the decree is erroneous.

2. PARTIES TO APPEAL.
 A party to the suit who has succeeded by purchase to the rights of persons affected by the decree may join such persons in prosecuting the appeal.

3. ASSIGNMENT OF ERRORS.
 The omission to set out in the title of an assignment of error the names of all the parties to the record whose interests are intended to be, and manifestly may be, affected by the appeal, does not affect the jurisdiction of the circuit court of appeals over the parties whose names were omitted.

4. SAME.
 On appeal from a decree holding certain shareholders of a corporation liable to creditors, a distinct specification for each creditor is not necessary if the question of the shareholders' liability to one creditor is not different from that of their liability to other creditors.

5. FOLLOWING STATE DECISION—CONSTRUCTION OF STATUTE.
 The first direct ruling of the supreme court of the state upon a particular question involving the construction of a state statute will be followed by the federal court. 68 Fed. 1006, reversed.

6. JUDGMENT AGAINST CORPORATION—EFFECT ON SHAREHOLDERS.
 In respect to rights arising out of contracts other than subscriptions for stock, a shareholder is not bound by a judgment or judicial proceeding against a corporation to which he was not a party. 68 Fed. 1006, reversed.

7. SAME—PARTICIPATION IN DEFENSE.
 Persons are not bound by a decree by reason of their participation in the suit unless their conduct in that regard was open and avowed, or otherwise known to the opposite party, so that it, too, was concluded, or would have been, by an adverse judgment.

8. STOCKHOLDERS—PERSONAL LIABILITY.
 Persons holding stock by direct issue as collateral security for a debt of the company to them are not liable to creditors of the company, as if

they subscribed for it, unless they allowed themselves to be represented as shareholders to the creditors who gave credit on the faith of that liability.

9. SAME—INVALID STOCK.

Under the Wisconsin statute, if an issue of stock as collateral for a debt of the company is illegal, the stock is void, and the holder thereof is not liable to corporate creditors who were not especially misled by his conduct.

10. CORPORATE BONDS—CANCELLATION—RETURN OF CONSIDERATION.

Bonds issued by a corporation as collateral for a debt will not be ordered to be canceled because issued in violation of the state statute requiring payment in money or property of a certain per cent. of their face value, unless the money received by the company upon the pledge of the bonds has been repaid or otherwise secured.

11. MORTGAGE OF FRANCHISE—CONSTRUCTION.

A mortgage of a franchise giving the right to "construct, own, maintain, and operate" a certain water plant in process of construction, carries with it such plant.

Appeals from the Circuit Court of the United States for the Eastern District of Wisconsin.

These appeals are from a single decree. The suit was brought by the appellee, the National Foundry & Pipe Works, Limited, against the Oconto Water Company, S. D. Andrews, W. H. Whitcomb, the city of Oconto, the Oconto City Water-Supply Company, and others. The original bill was in the nature of a creditors' bill, and, besides averring the recovery of a judgment at law by the complainant against the Oconto Water Company for the sum of $24,192.75, and costs taxed at $57.29, the issue of execution upon the judgment and return of nulla bona, the insolvency of that company, and its indebtedness to various creditors, which it could not pay, and other facts not material here, alleged that of the capital stock of the company, consisting of 1,000 shares for $100 each, 990 shares were issued to Charles C. Garland, the president of the company, and the remaining 10 shares to persons named who took the same in the interest of Garland; that no consideration, either of money, labor, or property, was paid for any of the stock so issued, but the same was issued contrary to the provisions of the statute of Wisconsin, and was wholly fictitious and void; that afterwards, on October 2, 1890, Garland and another, who held seven shares, assigned their shares of stock to Andrews and Whitcomb; that on October 18, 1890, in lieu of the shares so assigned, and which were then surrendered, the company issued to Andrews and Whitcomb directly certificates for 997 shares of the stock of the company; that these certificates were issued without consideration, either in money, labor, or property, contrary to the statute of Wisconsin, and were in all respects fictitious and void and in fraud of the rights of the complainant and other creditors of the company; that Andrews and Whitcomb are indebted to the company on account of the stock held by them for an amount sufficient to pay the complainant's judgment and the other debts of the company; that on July 9, 1890, the city of Oconto passed an ordinance authorizing the Oconto Water Company to construct and operate a system of waterworks in that city; that on or about September 13, 1890, Garland, as president, and the secretary of the water company, without any resolution of the directors, executed to Andrews and Whitcomb a writing, whereby the company in form agreed to transfer and assign its franchise, its capital stock, and its bonds to the amount of $100,000, to be secured by a deed of trust of its franchise, rights, and privileges, to Andrews and Whitcomb as collateral security for moneys thereafter to be advanced by them to the company; that thereupon, by an instrument dated September 13, 1890, the transfer and assignment so stipulated to be made were in form executed; that the agreement of September 13th was never recorded in the office of the register of deeds of Oconto county, nor was the same, or a copy thereof, ever filed in the office of the clerk of the city of Oconto, but the same was taken and held as a secret lien; that the assignment of the same date was not recorded until January 19,

1891, and was also-taken and held as a secret lien; that since the 12th day of January, 1891, when officers of the company were elected in the interest of Andrews and Whitcomb, the conduct and management of the company and of all of its affairs have been solely in the hands of Andrews and Whitcomb, their agents and attorneys, other officers and directors acting nominally and under their direction only: that on March 13, 1891, they caused the company to transfer and reinvest in them; as collateral security for further advances, its franchise, stock, bonds, and all other property then belonging to the company, and on May 16, 1891, caused the company to make another and like agreement transferring the franchise, stock, bonds, and other property as security for further advances; that these agreements were not recorded, but held as secret liens; that the trust deed mentioned, transferring all the franchises, rights, and property of the company, was executed on the 1st and recorded on the 13th day of November, 1890; that three days later Garland, without authority, and without any consideration therefor in money, labor, or property, delivered the bonds to Andrews and Whitcomb; that at all the times named Andrews' was in the employ of the Oconto Water Company as superintendent; that the company during all the time was, and was known by Andrews and Whitcomb to be, insolvent. It is alleged that the Oconto City Water-Supply Company claims to have some interest in the premises and in the franchise of the Oconto Water Company as a subsequent purchaser or incumbrancer or otherwise to complainant unknown.

The prayer of the bill in part was that a receiver be appointed; that the stockholders be adjudged to pay the amounts found due on unpaid subscriptions for stock, and that the agreement and the assignment of September 13, 1890, and later agreements executed by the Oconto Water Company to and in favor of Andrews and Whitcomb, and all other assignments, transfers, and instruments executed by that company, and the issue and delivery of mortgage bonds, be adjudged fraudulent and void. On this bill the court appointed a receiver, and directed Andrews and Whitcomb to surrender to him the possession of the waterworks plant. On appeal to this court that order was modified. 10 C. C. A. 60, 18 U. S. App. 458, 61 Fed. 782. The final hearing of the cause commenced December 11, 1894, pending which, on December 15, the complainant filed amendments to the bill to the effect that since the bringing of the suit, to wit, on the 3d day of October, 1892, the complainant had obtained, in the same court, a decree against the Oconto Water Company, whereby it has a mechanic's lien upon the well, buildings, machinery, and entire waterworks plant, and all the right, title, and interest of the Oconto Water Company, or of any person claiming under it, and to the premises. upon which the plant is located, and the franchise of maintaining and operating the plant, the lien dating and commencing September 15, 1890, which lien, with other mechanics' liens decreed against the premises, the complainant alleges to be a first lien, and entitled to priority over all liens asserted by or on behalf of any of the defendants; and, after setting forth the contract under which the complainant had furnished materials, and the dates of delivery, it is alleged that the complainant had no knowledge or notice of the contract and the assignment of September 13, 1890, and relied upon the franchise of the water company being free and clear of all liens and incumbrances. R. D. Wood & Co., interveners, filed a like amendment to their intervening petition. The appellants Andrews and Whitcomb answered separately from the other respondents; and upon the facts, which are set forth in detail and at great length, they deny all liability as stockholders, and, insisting upon the validity of their contracts and liens upon the property and franchises of the water company, contend that in respect to the rights which they now assert they were not privy to nor bound by the decrees whereby the appellee and others were declared to have mechanics' liens, and that under a recent decision of the supreme court of Wisconsin those decrees were erroneous. The appellee joined issue.

The court decreed: (1) That the Oconto Water Company is insolvent, and that the proceeds of its property should be distributed among its creditors. (2) That the complainant and other intervening creditors have liens for amounts stated upon all the rights, franchises, and property of the Oconto Water Company, pursuant to and as provided in the mechanics' lien decrees

of the court. (3) That Andrews and Whitcomb were privies to and concluded by the mechanics' lien decrees in favor of the complainant and R. D. Wood & Co. (4) That the mechanics' liens so decreed were and are each valid, and prior to the lien of the instrument claimed to be a mortgage, bearing date September 13, 1890, under which the defendants Andrews and Whitcomb assert their right to a lien upon and title to the property and franchises of the Oconto Water Company, and are superior and paramount to any and all other liens or rights of said defendants upon and in said franchises and property. (5) That the complainant and R. D. Wood & Co. are authorized to proceed to the enforcement and satisfaction of their respective liens, in accordance with their several decrees. (6) That Andrews and Whitcomb are stockholders of the Oconto Water Company, owning and holding all the shares, amounting to $100,000, issued and assigned to them, without any sum having been paid therefor by any one, of which they had notice when they received the same, and that they are liable for all unpaid amounts so far as necessary to discharge the indebtedness of the company, not exceeding $100,000 in the aggregate. (7–10) That the Oconto Water Company is indebted to parties named in unsecured sums specified. (11) That Andrews and Whitcomb pay the sums so adjudged due to unsecured creditors, and any deficiency that may be found due to secured creditors, after applying to the satisfaction of their lien decrees the proceeds of sales thereunder, the deficiency to be determined by an order of court at the foot of the decree. (12) That the mortgage bonds of the company delivered to Andrews and Whitcomb were issued contrary to the statute of Wisconsin, and are void, and are ordered surrendered to the clerk of the court for cancellation. (13) That the instruments executed in the name of the Oconto Water Company to Andrews and Whitcomb were made in good faith and for a valuable consideration, and were not withheld from record by their procurement nor with their consent, nor in fraud of creditors. (14) That the receiver be paid for his services $5,000, to be paid, after deducting $3,000, already retained by order of the court by the Oconto City Water-Supply Company out of the moneys heretofore turned over to it arising from the operation of the water plant by the receiver. (15) That the complainant recover of Andrews and Whitcomb $254.10 costs herein taxed.

The appellants Andrews and Whitcomb and the Oconto City Water-Supply Company, joining in the assignment of error, say that the decree "is erroneous and against the just rights of said defendants for the following reasons: First. Because the evidence shows that the said defendants S. D. Andrews and W. H. Whitcomb were not privies to, or concluded or in any way affected, either themselves or their rights, by either of the mechanic's lien decrees referred to in the third paragraph of said decree. Second. Because the evidence fails to show any lien in favor of the complainant or the intervening petitioners herein, R. D. Wood & Company, upon any of the rights, franchises, or property of, or upon the plant constructed by, the Oconto Water Company in the city of Oconto. Third. Because the evidence shows that the liens acquired by said defendants S. D. Andrews and W. H. Whitcomb upon the franchises and plant constructed in said city of Oconto by the Oconto Water Company were superior and paramount to any and all other liens upon or rights in said property, and that they made title to said property through such liens, and that they, or their grantee, the defendant Oconto City Water-Supply Company, have, ever since such title was made, held the same free and clear of all liens. Fourth. Because the evidence shows that said defendants S. D. Andrews and W. A. Whitcomb never became stockholders of said defendant Oconto Water Company. Fifth. Because the evidence shows that, if there was ever any valid issue of any stock of the defendant Oconto Water Company, it was either full-paid stock before coming into the hands of Andrews and Whitcomb, or, if not then full, was at least part paid stock, and the evidence fails to show the amount then remaining unpaid. Sixth. Because the evidence shows that the receiver was not entitled to any compensation for services or counsel fees out of any of the moneys arising from the operation of the water plant by the receiver. Seventh. Because the evidence shows the complainant to be entitled to no relief as to the bonds mentioned in the twelfth paragraph of the

decree. Eighth. Because the mechanic's lien laws of Wisconsin gave no lien upon the franchises or plant of Oconto Water Company."

The city of Oconto, by a separate assignment, says that the decree, "so far as it allows the enforcement and execution of the 'lien decrees' therein mentioned in the third paragraph, is erroneous, and against the just rights of this defendant, for the following reasons: First. Because the evidence shows that this defendant was not privy to, or concluded, or in any way affected by, either of the mechanics' lien decrees referred to in the third paragraph of said decree. Second. Because the evidence fails to show any lien in favor of the complainant or the intervening petitioners herein, R. D. Wood & Co., upon any of the rights, franchises, or property of, or upon the plant constructed by, Oconto Water Company in the city of Oconto. Third. Because the mechanic's lien laws of Wisconsin gave no lien upon the franchises or plant constructed by Oconto Water Company in the city of Oconto."

W. H. Webster and Geo. G. Greene, for appellants.

Geo. H. Noyes and W. D. Van Dyke, for appellee.

Before WOODS and SHOWALTER, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The assignment of error by Andrews and Whitcomb and the Oconto City Water-Supply Company, while not drawn in strict compliance with rules 11 and 24 of this court (11 C. C. A. cii., cx., 47 Fed. vi., xi.), may be regarded as fairly equivalent to the assertion that the decree rendered is erroneous (1) in declaring valid the mechanics' lien decrees of the complainant and R. D. Wood & Co., (2) in declaring Andrews and Whitcomb bound by those decrees, (3) in failing to declare the liens and title of Andrews and Whitcomb valid and superior to any adverse right asserted, (4) in declaring Andrews and Whitcomb liable to creditors for the amount unpaid upon shares of stock, (5) in ordering the cancellation of mortgage bonds, and (6) in ordering the receiver paid for his services out of moneys arising from his operation of the water plant. The specifications of error in a case brought up by appeal should be, not that the evidence shows this or that, but that in this or that particular, separately stated, the decree is erroneous. McFarlane v. Golling (by this court) 76 Fed. 23.

It is urged that the Oconto City Water-Supply Company is not interested jointly with Andrews and Whitcomb, and that under the decisions in McDonald v. U. S., 12 C. C. A. 339, 24 U. S. App. 25, and 63 Fed. 426, and Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 12 C. C. A. 350, 24 U. S. App. 38, and 63 Fed. 891, the assignment of errors is not available for Andrews and Whitcomb, who alone are interested. But it appears, without dispute, that the Oconto City Water-Supply Company succeeded by purchase to the rights, whatever they were, of Andrews and Whitcomb, and therefore is entitled to join them in prosecuting the appeal.

It is urged, also, that the assignment of errors is not sufficient to bring under review those portions of the decree which are in favor of intervening creditors, because the assignment does not contain the names of the creditors in the title, nor allege error separately in respect to each creditor. The better, and, as we suppose, the common, practice, is to set out in the title of an assignment of errors

the names of all parties to the record whose interests are intended to be, or manifestly may be, affected by the appeal, but the omission to do so in this instance does not affect, we think, the jurisdiction of this court either over the parties or the subject-matter. By express rule this court, like the supreme court, "at its option, may notice a plain error not assigned"; and jurisdiction over parties likewise is acquired, not by naming them in the assignment of errors, but by citation, or equivalent notice, or by their voluntary appearance. In respect to the other objection, if the question of the liability of Andrews and Whitcomb as shareholders to one creditor was different from the question of their liability to another or other creditors, a distinct specification for each, under rule 11 (11 C. C. A. cii., 47 Fed. vi.), would be necessary, but the question presented is a single one, without suggestion of liability upon any ground not available equally for all unsecured creditors.

The assignment of error by the city of Oconto contains the single specification that the decree is erroneous in "so far as it allows the enforcement and execution of the lien decrees therein mentioned in the third paragraph." The added reasons may have the effect to define and limit the scope of this specification, but they do not enlarge it, or constitute additional specifications.

The question of primary importance, it is evident, is whether the liens decreed in favor of the complainant and one of the interveners were authorized by the statute of Wisconsin. As between two of the parties to the record the question has been decided by this court in the affirmative (Oconto Waterworks Co. v. National Foundry & Pipe Works, 7 C. C. A. 603, 18 U. S. App. 380, and 59 Fed. 19); but in another and later case, in which the Chapman Valve Company, also a party to this appeal, was complainant, the supreme court of Wisconsin, in a carefully considered opinion, affirmed the contrary ruling of the circuit court for Oconto county (Chapman Valve Manuf'g Co. v. Oconto Water Co., 89 Wis. 264, 60 N. W. 1004). The ruling of this court was based upon the opinion delivered in the circuit court by Judge Jenkins, who, it will be observed, deduced his conclusion from the analogies of previous decisions of the supreme court of Wisconsin, none of which involved the precise question. That opinion and its affirmance by this court are referred to in the later opinion of the Wisconsin court, which declared itself "constrained to a different judgment by the force of its former decisions, and by the logic of the situation"; and added that the view taken was deemed to be "in accord with the weight of authority and the better reason." That decision, being the first direct ruling of the supreme court of the state upon the exact question under consideration, must be regarded as establishing a construction of the statute which the federal courts will follow without further inquiry. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227; Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466; Lowndes v. City of Huntington, 153 U. S. 1, 14 Sup. Ct. 758; Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945; Folsom v. Township Ninety-Six, 159 U. S. 611, 16 Sup. Ct. 174; Balkam v. Iron Co., 154 U. S. 177, 14 Sup. Ct. 1010. In Forsyth

v. City of Hammond, 18 C. C. A. 175, 71 Fed. 443, to which reference has been made, this court declined to follow the latest ruling of the supreme court of the state from which the case came, but it will be observed that it was because the decision was deemed to be distinctly inconsistent with the previous decisions of that court, and in conflict with the weight and general current of authority on the subject. It is contended, however, that for the purpose of this case the question was conclusively determined by the decision of this court. As between the immediate parties to the suit, in which the decision was made, that would seem to be necessarily so. The matter there determined became, as against the Oconto Water Company, res judicata. But Andrews and Whitcomb and the Oconto City Water-Supply Company were not parties to that suit nor to the lien decrees, and, if they are bound by these decrees, it is because of facts not apparent in the record of the suits in which they were rendered. It appears by the opinion delivered below that Andrews and Whitcomb were held to be concluded by the decree against the Oconto Water Company, "so far as the determination of the lien is concerned," because at the commencement and during the pendency of the suit they were not only the holders of the stock standing in their names on the books of the company, but they actually controlled the business of the corporation. National Foundry & Pipe Works v. Oconto Water Co., 68 Fed. 1006. There is privity, of course, between a corporation and its shareholders in respect to corporate rights and liabilities, and it results necessarily that a judgment or decree against a corporate body is conclusive upon the owners of stock in respect to their rights as shareholders. In other words such judgment or decree is not open to collateral attack by a shareholder for the purpose of asserting or protecting his interests as a shareholder. Sanger v. Upton, 91 U. S. 56; Graham v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Bennett's Ex'rs v. Glenn, 5 C. C. A. 353, 8 U. S. App. 419, and 55 Fed. 956. But we know of no case that holds, and on principle we think it cannot be maintained, that in respect to rights arising out of contracts other than subscriptions for stock a shareholder can be bound by a judgment or judicial proceeding against the corporation to which he was not in fact a party. Every mortgagee is in privity with his mortgagor, but he is not, for that reason, bound by decrees against the mortgagor obtained by the holders of other liens, either prior or subsequent, unless made party to the suit. Except in respect to his rights as a shareholder, the owner of stock in a corporate body is a stranger to the corporation, and without his consent cannot be represented by it. Freem. Judgm. § 177; 2 Black, Judgm. § 583; 4 Thomp. Corp. §§ 4459, 4460; Merrick v. Coal Co., 61 Ill. 472. The holding of the stock, therefore, whether as collateral security or upon subscription, did not bind or tend to bind Andrews and Whitcomb by the lien decrees, in respect to the title which they had acquired by foreclosure of their own mortgage upon the franchises of the water company, and, if they are concluded at all, it must be by reason alone of their management of the affairs of the cor-

poration pending the suit. The suit was begun in January, 1891, by a bill which made no mention of Andrews and Whitcomb, and contained no averment in derogation of their rights. The decree was not entered until October 3, 1892. Meanwhile, on June 17, 1891, in the same court, Andrews and Whitcomb brought suit against the Oconto Water Company to foreclose their mortgage, and on the 13th day of August obtained a decree by virtue of which, on September 12, 1891, they purchased the franchises of the company. The notice of mechanic's lien, and the bill for foreclosure thereof, embraced only the tangible property constituting the waterworks plant, but the decree directed the sale of the property described, and also of the franchise of maintaining and operating the plant for the uses to which it had been devoted by the law of the company's incorporation. It is not to be supposed upon the evidence that the plaintiff in either case did not know of the claim upon the property asserted by the other, and it is fairly inferable that each preferred for some reason to prosecute his suit against the company alone, unembarrassed by the questions likely to be raised if the other were brought in as a defendant. If now it be conceded that the employment of counsel to defend the mechanic's lien suit was known to Andrews and Whitcomb, or even that they, as agents of the company, effected the employment, is that enough, under the authorities, to conclude them as if they had been parties to the record? There is no suggestion that they assumed the defense of the suit as one in which their own interests were in question, nor that the plaintiff in the action was led to believe that more was involved in the contest than a settlement of the issues joined between the parties of record. Estoppels in such cases, as in others, must be mutual, and it is not to be considered that Andrews and Whitcomb became bound by the decree, by reason of their participation in the defense, unless their conduct in that regard was open and avowed, or otherwise known to the opposite party, so that it, too, was concluded, or would have been by an adverse judgment. Herm. Estop. p. 157; 2 Van Fleet, Former Adj. § 523; 2 Black, Judgm. § 540; Freem. Judgm. § 189; Lacroix v. Lyons, 33 Fed. 437; Schroeder v. Lahrman, 26 Minn. 87, 1 N. W. 801; Association v. Rogers, 42 Minn. 123, 43 N. W. 792; Brady v. Brady, 71 Ga. 71; Majors v. Cowell, 51 Cal. 478; Allin's Heirs v. Hall's Heirs, 1 A. K. Marsh. 525. See, also, David Bradley Manuf'g Co. v. Eagle Manuf'g Co., 6 C. C. A. 661, 57 Fed. 980. It is to be observed, moreover, that in this case neither in the original bill, nor in the amendment thereto by which the lien decree was first mentioned, is the supposed estoppel alleged or the facts averred from which it could be deduced. Not being concluded by the decree against the water company, Andrews and Whitcomb, it follows, were at liberty in this suit to dispute the validity of the mechanics' liens in so far as they might affect the title obtained through their mortgage. The lien decrees out of the way, all questions concerning the recording of that mortgage and the antecedent contracts disappear.

This much determined, the importance is apparent of the question whether Andrews and Whitcomb should have been declared liable to the creditors of the Oconto Water Company, as holders of un-

paid stock. The proof is clear that they never subscribed for stock, and, excepting one share each, never received stock by assignment from a subscriber therefor, directly or remotely. By the contract of September 13, 1890, by which they undertook to advance money to the water company, the company agreed to issue the stock to them as collateral security for the loan, and when, in discharge of that agreement of the company, Garland attempted to assign to them certificates of shares which, upon his subscription, had been issued to him, but for which he had not paid in money or property, they refused to accept the assignment, and were given certificates issued to them directly by the company. What reason they gave for requiring that the stock be issued in that form is not material. They are presumed to have known the law, and are entitled to whatever advantages result from their insistence upon the course taken no less than if the purpose to secure those advantages had been avowed. Neither is it material here that the stock had been subscribed for and issued to Garland. Under the statute of Wisconsin the water company probably might have treated the issue to him as void, and without his consent have issued the same, or other shares in lieu thereof, to Andrews and Whitcomb. The issue to them was made, however, with Garland's consent, and, indeed, by his own act as president of the company, and it was a matter wholly between him and the company whether the shares should be regarded as still his, if redeemed. In that question Andrews and Whitcomb did not need to be, and it does not appear that they were in fact, concerned. Holding the stock by direct issue as collateral security for the debt of the company to them, they could not be liable to the company to pay for the stock as if they had subscribed for it, and, not being liable to the company, they are not liable to the creditors of the company, unless they allowed themselves to be represented as shareholders to creditors who, in giving credit, acted or should be presumed to have acted on the faith of that liability. "The liability of a shareholder to pay for stock," says the court of appeals of New York, in Christensen v. Eno, 106 N. Y. 97, 102, 12 N. E. 648, 650, "does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute; and, in the absence of either of these grounds of liability, we do not perceive how a person to whom shares have been issued as a gratuity, by accepting them, committed any wrong upon creditors, or made himself liable to pay the nominal face of the shares as upon a subscription or contract." In the same case it is said that: "Assuming that the transaction as to the company was ultra vires, or that it could not give away its shares, the transaction, in that view, was simply a nullity, and Eno got nothing as against any one entitled to question the transaction; but it did not convert him into a debtor of the company for the forty per cent. He entered into no contract to pay it." This view is more certainly true under the Wisconsin statute, which not only forbids, but declares void, stock for which payment in money or property is not made when it is issued. Rev. St. Wis. § 1753. The bill alleges that the shares issued to Garland and also those issued to Andrews and Whitcomb were void, and prays that it be so adjudged. In Burgess v. Seligman, 107 U.

S. 20, 2 Sup. Ct. 15, it is said: "The courts in England, and some in this country, have gone very far in sustaining a liability for unpaid subscriptions to stock against persons holding the same in any capacity whatever, whether as trustees, guardians, or executors, or merely as collateral security. It cannot be denied that in some cases the extreme length to which the doctrine has been pushed has operated very harshly; and in cases in which the corporation itself has no just right to enforce payment, and where no bad faith or fraudulent intent has intervened, it may be doubted whether creditors have any better right, unless by force of some express provision of a statute." And in the same case, at page 32, 107 U. S., and page 20, 2 Sup. Ct., it is said that: "If the law declares that stock held as collateral security shall not make the holder liable, * * * when this fact is once established, there is an end of the application of estoppel, unless it can be invoked by some party who has been specially misled by the conduct of the defendants." These propositions, though employed in a case which arose under a special statute, are of general application, and therefore pertinent, in the absence of a controlling statute, to any holding of corporate stock as collateral security. If, under the Wisconsin statute, the stock in the hands of Andrews and Whitcomb was lawfully held as a collateral, they are not liable as upon an unpaid subscription. They made no subscription. And, if not lawfully in their hands, the stock, by the terms of the statute, was void, and there is no ground of liability, unless it be to a creditor who was especially misled by their conduct. There is no such creditor. Of the total indebtedness of the company of $27,380.37, the sum of $26,163.52 was contracted before any stock was issued to Andrews and Whitcomb, and of the remainder only the sum of $200 was incurred between the issue of the stock and the making of an entry upon the stock book which showed the pledge. No creditor examined the stock book, or supposed that Andrews and Whitcomb were stockholders. Besides the cases referred to, see the following: Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530; Welles v. Larrabee, 36 Fed. 866; Pauly v. Trust Co., 56 Fed. 430; Id., 7 C. C. A. 422, 58 Fed. 666; Beal v. Bank, 15 C. C. A. 128, 67 Fed. 816; Association v. Seligman, 92 Mo. 635, 15 S. W. 630; Exchange Bank v. City, etc., Sav. Bank, Mont. Law Rep. 6 Q. B. 196; First Nat. Bank of Deadwood v. Gustin Minerva Con. Min. Co., 42 Minn. 327, 44 N. W. 198; White-hill v. Jacobs, 75 Wis. 474, 44 N. W. 630. If by foreclosing their lien they became absolute owners of the stock, assuming that the pledge was valid, they certainly did not thereby become liable to make further payment for the stock, either to the company or to its creditors. If the pledge was invalid, the foreclosure or forfeiture gave them no better right, and we come again to the proposition that, the stock being void, they could be liable as holders of it, if at all, only to creditors specially misled. The fact that they procured Garland to transfer his supposed interest in the stock to Sturtevant, who afterwards appeared on the books as the ultimate owner, does not seem to be of importance, even if it be conceded that Sturtevant held only for their use. It was a step proper, if not necessary, for the protection of

their interests, and the putting of the title in the name of another had no tendency to deceive or mislead any one into giving credit in the belief that Andrews and Whitcomb were liable as stockholders.

The next question is whether the mortgage bonds which constituted a part of the collateral given to Andrews and Whitcomb should have been ordered canceled because issued in violation of a statute of the state (Rev. St. Wis. § 1753), which declares void bonds issued without the payment in money or property of 75 per cent. of their face value. Conceding the application of the statute, it is insisted that, until the money received by the water company upon the pledge of its bonds has been repaid or otherwise secured, equity will refuse to interfere. The doctrine is familiar and is well illustrated by the recent decision of this court in Association v. Lohmiller, 20 C. C. A. 274, 74 Fed. 23, but whether applicable here need not be determined.

In respect to the compensation of the receiver, the question is one of the taxation of costs, and should be determined upon equitable considerations. High, Rec. § 796. In this case the receiver's management was successful; and, if he had not been in charge, it would have been necessary to employ another, who, if of equal capacity, and alike successful, would have earned equal pay; and, the trust in that view having suffered no harm, the order by which the compensation was allowed will not be disturbed.

In respect to the title of Andrews and Whitcomb, we are of opinion that, under the circumstances, the mortgage of the franchise carried with it the water plant. That the mortgage was valid this court declared when the case was here upon the first appeal. 18 U. S. App. 458, 10 C. C. A. 68, and 61 Fed. 782. The franchise, as described in the ordinance referred to in the mortgage, included the right to "construct, own, maintain, and operate" the particular water plant which was in contemplation, and already in process of construction, when the mortgage was executed. In the opinion in Chapman Valve Manuf'g Co. v. Oconto Water Co., 89 Wis. 264, 273, 60 N. W. 1004, 1005, it is said: "Nor does the franchise follow the plant by force of the rule that the incident follows the principal. If that maxim has any application, it should be considered that the franchise is the principal thing. All other rights spring from the franchise."

The decree below is reversed, with direction to dismiss the bill for want of equity.