STURTEVANT v. NATIONAL FOUNDRY & PIPE WORKS, Limited, et al.

(Circuit Court of Appeals, Seventh Circuit. July 26, 1898.)

No. 494.

1. **UNPAID SUBSCRIPTION FOR STOCK—ISSUE OF NEW CERTIFICATES—LIABILITY OF ASSIGNEE THEREOF.**

 Rev. St. Wis. § 1753, forbids and declares void an issue of stock for which payment has not been made. Section 1756 provides that persons transferring such stock shall be liable to certain corporate creditors for the amount unpaid thereon. Certificates of shares for which the subscriber had not paid were surrendered, and new certificates, in lieu thereof, issued to others as collateral security for a liability of the corporation; it being understood that the original subscriber was the owner of the new shares, subject to the pledge. *Held*, that one to whom the original subscriber assigned his interest in such certificates was not liable to pay therefor unless he allowed himself to be represented as a shareholder to creditors, who, in giving credit, acted on the faith of such liability.

2. **SAME—LIABILITY OF ONE ACQUIRING TITLE THROUGH ONE NOT LIABLE.**

 Where holders of certificates of stock issued directly to them as collateral security for an obligation of the corporation were not liable to pay therefor, either to the corporation or its creditors, one who acquired, through them, title to, interest in, or appearance of holding, such certificates, cannot be held so liable.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a suit, in the nature of a creditors' bill, brought by the National Foundry & Pipe Works, Limited, against the Oconto City Water-Supply Company, S. D. Andrews, and others. A decree in favor of complainants and intervening creditors was reversed by this court (22 C. C. A. 110, 76 Fed. 166), and, on remand, a decree was rendered against George W. Sturtevant, Jr.,—against whom, on default of answer, a decree pro confesso had been taken,—and he prosecutes this appeal.

George G. Greene and W. H. Webster, for appellant.

George H. Noyes, for appellees.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge. This appeal is from the decree rendered in the circuit court upon the return of the mandate of this court in Andrews v. Pipe Works, 46 U. S. App. 281, 22 C. C. A. 110, and 76 Fed. 166. In pursuance of the mandate the court dismissed the bill as against Andrews and Whitcomb, and certain of the other parties, but proceeded to enter a decree against the present appellant, George W. Sturtevant, Jr., who had not been made a party to the appeal of Andrews and Whitcomb,—nothing having been adjudged against him in the decree taken against them, though before the rendition thereof there had been taken against him, on default of answer to the bill, a decree pro confesso. The final decree against him, from which this appeal is prosecuted, after disposing of the other parties in accordance with the mandate and reciting that a decree pro confesso had been theretofore taken against him, finds that he was and is the assignee and successor in interest of the defendant Charles C. Garland, who subscribed for 990 shares of the capital stock of the defendant the Oconto Water Company; that the shares were issued, and all rights under Garland's subscription therefor were assigned to him, and he was and is the holder thereof, without anything having been paid therefor by him or by Garland or by any one, of which fact he had knowledge when he took the assignment; that he is liable for the unpaid amount due upon such subscription and stock, so far as necessary to discharge the indebtedness of the Oconto Water Company, "heretofore adjudged herein, not exceeding, however, the sum of $99,000." And accordingly the court entered a decree that Sturtevant pay to the several creditors named the amounts of their respective claims, and to the appellee the National Foundry & Pipe Works, Limited, the sum of $25,637.32, with interest thereon from October 3, 1892, and $254.10 costs, less $424.93 realized from the proceeds of the sale made under the mechanics' liens decrees obtained by the appellee.

The appellant contends that the decree is not justified by the bill or by the proofs, or by the mandate of this court. It is suggested in the brief for the appellees that the assignment of errors does not raise any of these questions. It is not alleged in the assignment that the decree is contrary to the mandate of this court, but there are specifications of error to the effect that the decree is wrong, in that it adjudges the appellant liable for the unpaid amount of the shares of stock subscribed for by Garland, to the extent necessary to discharge the indebtedness of the Oconto Water Company, and decrees that he pay to those creditors, respectively, the several amounts due them. Whether that decree is right depends upon the allegations of the bill, and upon the proofs. Thompson v. Wooster, 114 U. S. 104, 5 Sup. Ct. 788; Ohio Cent. R. Co. v. Central Trust Co. of New York, 133 U. S. 83, 10 Sup. Ct. 235.

The facts, briefly stated, are that Garland had subscribed and received certificates for 990 of the 1,000 shares of the stock of the company, but had paid nothing therefor. In October, 1890, the certificates were surrendered,—Andrews and Whitcomb having refused to accept an assignment thereof,—and certificates for a like number of shares were issued by the company directly to Andrews and Whitcomb, in pursuance of a contract theretofore made, to secure a lia-

bility of the company to them. It seems to have been understood all the while that the ultimate ownership of the shares of stock issued to Andrews and Whitcomb, subject to the pledge, was in Garland; and accordingly, on January 12, 1891, in consummation of an arrangement between Garland and Andrews and Whitcomb, but at the instance and in the main for the benefit, of Andrews and Whitcomb, Garland executed to Sturtevant a writing whereby, after declaring himself the true owner of certificates of stock described by number and as held by Andrews and Whitcomb as collateral security, he said, "I do hereby, for value received, sell, assign, transfer, and set over unto George W. Sturtevant, Jr., Bushnell, Ill., all my right, title, and interest in and to all the said certificates of stock," etc.; adding a power of attorney to make all necessary assignments and transfers on the books of the company. It does not appear that any assignment of the stock on the books of the company was made, but the record of the proceedings of the company on January 12, 1891, shows a written consent of stockholders to the holding of a meeting of the stockholders of the company, wherein it is recited that each of the undersigned owns the number of shares of stock in the company set opposite his name, and opposite the subscribed name of Sturtevant is set "990 shares." A stockholders' meeting was then held, at which Sturtevant was elected a director of the company in the place of Garland, resigned; and at a later meeting of the directors on the same day he was chosen president of the company, and served in that capacity until his testimony was taken in this case. For the general scope of the original bill and amendments thereto reference is made to the report of the opinion on the appeal of Andrews and Whitcomb. The decree by which Andrews and Whitcomb had been declared liable to the creditors of the company for the amount of the unpaid stock subscribed for by Garland having been reversed and the cause remanded, it was held, upon the same averments and proofs, that Sturtevant had come into the shoes of Garland and was liable to the creditors of the company to the amount of the stock for which Garland had subscribed. The more important of the allegations of the bill which are pertinent to the question, and some of which, counsel argues, are sufficient to support the decree, are the following:

That Garland subscribed for and received two certificates of stock,—one for 490 shares, and one for 500 shares,—which certificates on October 2, 1890, he assigned to the defendants Andrews and Whitcomb. That on October 18, 1890, Garland, as president and the secretary of the company, caused to be issued to Andrews and Whitcomb, in lieu of the certificates theretofore issued, three certificates, each for 300 shares, and another certificate for 97 shares, of the stock of the company. That these certificates were issued by the corporation without consideration in money, labor, or property, "contrary to the provisions of the statute of the state of Wisconsin, and were in all respects fictitious and void, and in fraud of the rights of the complainant and other creditors" of the Oconto Water Company. "That no further subscription to the capital stock of said corporation has been made, and no further stock or certificates of shares of stock have been issued by or on behalf of said corporation, but that said Andrews and Whitcomb, by virtue of the premises, became, and are now, the assignees of the subscribers to the capital stock of said corporation, and claim to be owners and holders of the certificates of shares therein, to the said amount of 997 shares of its capital stock, and the said defendants Matt. S. Wheeler, A. J. Elkins, and N. S.

Todd are the assignees of the original subscribers, and the holders of certificates of three shares of stock in said corporation, as appears by the books and records of said corporation. That said defendants S. D. Andrews, W. H. Whitcomb, Matt. S. Wheeler, A. J. Elkins, and N. S. Todd constitute all the stockholders of record of said corporation, but, as complainant is informed and believes, the said defendants George W. Sturtevant, Jr., and F. H. Todd have and hold, or claim to have and hold, some interest in or title to a portion of said shares of stock; but what such interest or title is this complainant is not informed, and is unable to state, but alleges that, by virtue of such claim of said defendants Sturtevant and Todd, they claim to be, and are acting as, directors of said corporation, and said Sturtevant claims to be, and is acting as, the president thereof. That said defendants F. H. Todd, George W. Sturtevant, Jr., and S. W. Ford are, or claim to be, and are acting nominally as, the directors of said corporation. That said defendants S. D. Andrews and W. H. Whitcomb, Matt. S. Wheeler, A. J. Elkins, and N. S. Todd, George W. Sturtevant, Jr., and F. H. Todd, who are, or claim to be, assignees of the subscribers to the capital stock of said company, and who have and hold, or claim to have and hold, certificates of shares for all its capital stock, or some interest in or title thereto, and said Charles C. Garland, have not paid for the same, but are indebted to said corporation on account of said subscription, and the certificates of shares of stock issued by said corporation, to an amount sufficient to pay the judgment of this complainant, and the other debts of said defendant Oconto Water Company. That whatever sums are due from them, or either of them, upon such subscriptions, and by virtue of said stock and certificates of stock, are assets and trust funds of the said Oconto Water Company, and ought, in equity, to be collected, marshaled, and applied in satisfaction of the judgment of said complainant, and of the other debts of said corporation. That as to the amount which each of said defendants, as such stockholders and assignees of the subscribers to said stock, should justly and in equity respectively pay on account thereof, this complainant is not fully advised and informed; nor is it able to ascertain, except by the aid and decree of this court. That on or about the 12th day of January, A. D. 1891, the defendants S. D. Andrews and W. H. Whitcomb, being the holders of the certificates of the capital stock of said corporation as aforesaid, caused a stockholders' meeting to be held, and then and there caused it to appear that the defendant George W. Sturtevant, Jr., represented 990 shares of the capital stock of said company, and said defendant F. H. Todd represented 7 shares, and said defendant S. W. Ford represented 1 share, and said defendant W. H. Whitcomb represented 1 share, and the said defendant S. D. Andrews represented 1 share, of such capital stock, whereas in fact all said shares of stock were held and controlled by said Andrews and Whitcomb; the parties representing said stock other than said Andrews and Whitcomb being merely nominal parties, acting in the interest and under the control and direction of said Andrews and Whitcomb. That since the 12th day of January, 1891, and the election of said directors and officers as aforesaid, the conduct, management, and control of said Oconto Water Company, and of all its affairs, have been solely in the hands of S. D. Andrews and W. H. Whitcomb, their agents and attorneys; and all other persons acting either as directors or officers of said corporation have been so acting nominally and wholly at the request, and under the direction and control, of said Andrews and Whitcomb. That the said Andrews and Whitcomb, being such stockholders and officers of said defendant company, and in control thereof, on or about the 13th day of March, 1891, caused an agreement in writing to be entered into by and between said defendant Oconto Water Company and themselves," etc. "That thereafter, and on or about the 16th day of May, A. D. 1891, the said defendants S. D. Andrews and W. H. Whitcomb, then being such stockholders, officers, and directors of said defendant corporation, and being so in possession and control of the same, caused an agreement to be entered into," etc. "That on or about the 19th day of May, 1891, said defendants S. D. Andrews and W. H. Whitcomb, being such stockholders and officers of said defendant Oconto Water Company, and being in possession, control, and management of the same, and having or claiming to have in their possession its franchises, and all its stock, con-

sisting of $100,000, and all its first mortgage bonds, consisting of $100,000, entered into an agreement with said defendant Oconto National Bank whereby said Andrews and Whitcomb did assign, transfer, and set over to said bank the said franchises, stock, and bonds of said Oconto Water Company aforesaid, and did deliver into the possession of said bank all of said certificates of shares of stock and bonds as collateral security for advances thereafter made by said defendant bank to said defendants Andrews and Whitcomb, which said instrument in writing was never filed in the office of the city clerk of the city of Oconto, and which said instrument, and the security upon the franchises, stock, and bonds of said company undertaken to be given thereby and thereunder, were void and of no effect as against this complainant and the other creditors of said corporation. That the said defendant Oconto National Bank now claims to hold or have in its possession said franchises, certificates of stock, and bonds of said defendant corporation under and by virtue of said instrument of agreement dated May 19, 1891, executed between it and said Andrews and Whitcomb."

### The prayer of the bill, in part, is:

"That all the stock, property, choses in action, and effects of said Oconto Water Company may be sequestered by the court, and some discreet and proper person be appointed receiver of the same, and of the rents, issues, and profits of its said waterworks plant, with the usual powers of receivers in such cases. That the amounts of the subscriptions to the capital stock of said Oconto Water Company still unpaid by the said defendant stockholders, respectively, be ascertained and determined, and that said defendant stockholders be adjudged to pay the amount or amounts so found to be due and owing from them, and each of them, to said corporation. That the said property and said unpaid stock subscriptions be declared trust funds, to be administered for the benefit of said complainant and the other unsecured creditors of said defendant."

### The Revised Statutes of Wisconsin contain the following provisions:

"Sec. 1751. The capital stock of every corporation, * * * may be transferred by indorsement * * *; but such transfer shall not be valid, except between the parties thereto, until the same shall have been so entered on the books of the corporation, as to show the names of the parties by and to whom transferred, * * * and every person transferring any such certificates or shares of stock shall remain liable to the creditors of the corporation to the extent and in the manner prescribed in section seventeen hundred and fifty-six. * * *"

"Sec. 1753. No corporation shall issue any stock or certificate of stock except in consideration of money or labor, or property estimated at its true money value, actually received by it, equal to the par value thereof, * * * and all stocks * * * issued contrary to the provisions of this section, and all stock dividends or other fictitious increase of the capital stock of any corporation, shall be void."

"Sec. 1756. If any stock shall be transferred, which is not fully paid, the corporation may, by agreement, to be noted on its stock book, discharge the stockholder making such transfer, from liability to it for the unpaid part of his stock subscription, and accept that of the person to whom the stock is transferred in his place; but the person transferring such stock shall be liable for the amount unpaid thereon to the then creditors of such corporation, and those who may become such within six months after such transfer, or to any lawfully appointed receiver or assignee of the corporation for their use."

It is conceded that in this section (1756) the word "stockholder" is used as the equivalent of "stock subscriber." If that were not so, the section would be inconsistent with section 1753, which declares void certificates of stock for which the par value has not been paid. If the decree against appellant has any foundation in the aver-

ments of the bill alone, it must be in the allegation (quoted at length above) that Andrews and Whitcomb, being the real owners and holders of the certificates of stock issued to them, caused it to appear at the meeting of stockholders on January 12, 1891, that the appellant represented 990 shares of the capital stock of the company. The allegation that Sturtevant became a director and the president of the company is without material significance, because the nominal ownership of a single share of stock would have been enough to qualify him to hold those offices. Though it is not so alleged, there is evidence that he held other shares than those assigned by Garland. It is not alleged that he was a subscriber to the stock of the company, or that any subscriber had assigned to him his shares or rights as a subscriber, or, indeed, that by assignment or otherwise he was the owner or holder of any number of shares. Whatever right or interest or appearance of holding he had, according to the bill, was conferred upon him by Andrews and Whitcomb, and, that being so, he came by the transfer under no obligation by which, as holders of the certificates, they were not bound. On their appeal (46 U. S. App. 281, 22 C. C. A. 110, and 76 Fed. 166) it was held that they were not liable for the amount of the shares for which they had received certificates, directly to the company in any event, nor to the creditors of the company unless they had allowed themselves to be represented as shareholders to creditors who gave credit on the faith of that representation; and that, it was found, they had not done. To repeat the language then employed:

"Holding the stock by direct issue as collateral security for the debt of the company to them, they could not be liable to the company to pay for the stock as if they had subscribed for it; and, not being liable to the company, they are not liable to the creditors of the company, unless they allowed themselves to be represented as shareholders to creditors who, in giving credit, acted, or should be presumed to have acted, on the faith of that liability. 'The liability of a shareholder to pay for stock,' says the court of appeals of New York in Christensen v. Eno, 106 N. Y. 97, 102, 12 N. E. 648, 650, 'does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute; and, in the absence of either of these grounds of liability, we do not perceive how a person to whom shares have been issued as a gratuity, by accepting them. committed any wrong upon creditors, or made himself liable to pay the nominal face of the shares, as upon a subscription or contract.' In the same case it is said that: 'Assuming that the transaction, as to the company, was ultra vires, or that it could not give away its shares, the transaction, in that view, was simply a nullity, and Eno got nothing as against any one entitled to question the transaction; but it did not convert him into a debtor of the company for the forty per cent. He entered into no contract to pay it.' This view is more certainly true under the Wisconsin statute, which not only forbids, but declares void, an issue of stock for which payment in money or property is not made when it is issued. Rev. St. Wis. § 1753. The bill alleges that the shares issued to Garland, and also those issued to Andrews and Whitcomb, were void, and prays that it be so adjudged. In Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, it is said: 'The courts in England, and some in this country, have gone very far in sustaining a liability for unpaid subscriptions to stock against persons holding the same in any capacity whatever,—whether as trustees, guardians, or executors, or merely as collateral security. It cannot be denied that in some cases the extreme length to which the doctrine has been pushed has operated very harshly; and in cases in which the corporation itself had no just right to enforce

payment, and where no bad faith or fraudulent intent has intervened, it may be doubted whether creditors have any better right, unless by force of some express provision of a statute.' "

The one fact in proof, outside of the averments of the bill, which it is contended justifies the decree, is the assignment executed by Garland to the appellant. If that assignment should be deemed to have effected a transfer of any right of Garland to Sturtevant, the admission of it in evidence was inconsistent with the averments of the bill to the effect that Andrews and Whitcomb were the real owners and holders of the stock, and that whatever interest Sturtevant had was nominal, and held for their benefit; but, if regarded simply as the means by which it is alleged that Andrews and Whitcomb caused it to appear that Sturtevant represented 990 shares of the stock, its introduction in evidence in support of that averment may have been proper. But, given its fullest possible significance, what does the fact of the assignment having been made amount to? The contention is that it put Sturtevant in the place of Garland, as a subscriber to the stock of the company. That is not the purport of the writing. There is nothing in the terms used, or in the circumstances, if there could be inquiry beyond the writing, to indicate that that was the intention. The purport of the instrument was simply to sell and transfer to the appellant Garland's right, title, and interest in and to the certificates of stock issued by the company to and held by Andrews and Whitcomb, as collateral security under their contract with the company. By the averments of the bill, and by force of the statute of Wisconsin, those certificates were illegally issued and were void, unless they were made valid by the work and the expenditures of Andrews and Whitcomb in the construction of the waterworks plant. If the par value of the stock was paid in that way, Garland, if conceded to be the ultimate owner, was not liable for further payment on the stock, and his assignment could not have imposed that liability upon another. If, on the contrary, the certificates were void, because not paid for in full, as in fact they had not been, the assignment conferred no right and transferred no obligation. The certificates of stock issued originally to Garland, which he surrendered in order that certificates for the same number of shares might be issued by the company directly to Andrews and Whitcomb, were also void because the stock had not been paid for; but, notwithstanding the surrender of the certificates and the issue of the other certificates to Andrews and Whitcomb, it is doubtless true that, as a subscriber for the stock, Garland remained liable to the company and its creditors for the amount thereof, and might, by a proper method, have substituted another in his place as a subscriber, transferring both his rights and his obligations, except as otherwise provided by the statutes quoted. It would seem under section 1751, supra, that such a transfer could be valid only between the parties until entered on the books of the corporation; but how that would be need not now be considered, because no such transfer of the rights and liabilities of a subscriber for stock was attempted. The instrument evinces no such purpose, and equity will not, by an unnecessary implication or inference, find in it a meaning and operation for which

there is no basis in estoppel or other equitable consideration. To affirm the decree against Sturtevant would be to fasten upon him a liability which the bill was designed to charge upon others, which he never intended, nor was believed by anybody to have intended, to assume, for which he received no commensurate consideration, and on the faith of which nobody ever gave the corporation credit.

The decree against the appellant is reversed, with direction to dismiss the bill.